458 A.2d 580

**Anthony J. MANCINI and Joan Mary Sica,**

v.

**John S. MORROW and Bernadine J. Morrow, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 1, 1982.

Filed March 25, 1983.

194

Timothy O. Nolen, Norristown, for appellants.

Rubin Mogul, Ardmore, for appellees.

Before WICKERSHAM, ROWLEY and McEWEN, JJ.

McEWEN, Judge:

 We here consider an appeal brought by defendants from a judgment entered in the amount of $4,487.97 against defendants and in favor of plaintiffs who had purchased from defendants a residential property in Plymouth Township, Montgomery County, in October of 1977. We affirm.[1]

The amended complaint of the buyers, filed both in trespass and assumpsit, alleged that the sellers were aware that there were substantial and material damages to the premises and that the sellers deliberately, intentionally and deceitfully hid and concealed this damage so that it would not be ascertainable by the buyers. The complaint further alleged that as a result of the damages to the property, the buyers sustained damages for necessary repairs and replacements to the premises. The court found that the buyers proved that the sellers had taken affirmative measures to conceal structural defects in the garage wall and extensive water damage in the basement and further found that the sellers had removed a number of valuable electrical fixtures and curtain rods from the home prior to settlement.

 The sellers now argue that the trial court committed error when it found that they were liable to the buyers and when it computed the amount of damages. Our appellate role is to determine whether the findings of the trial

---

1. The notice of appeal to this court was filed on August 5, 1981, and stated that the appeal was taken from the July 29, 1981 order of the Common Pleas Court which dismissed the exceptions filed by defendants to the decision of the trial court. Orders dismissing exceptions following non-jury trials are interlocutory and non-appealable until judgment has been entered on the docket. *Laurel National Bank v. Mutual Benefit Insurance Co.*, 295 Pa.Super. 255, 441 A.2d 756 (1982); *Murray v. Abcon, Inc.*, 291 Pa.Super. 428, 435 A.2d 1301 (1981); *See* Pa.R.A.P. 301(c), 42 Pa.C.S.A. The judgment of the trial court was not entered on the docket until August 6, 1981, which was one day after the notice of appeal to this court was filed. The proper procedure for taking an appeal in this case would have been the entry of the judgment on the docket followed by the filing of a notice of appeal to this court from that judgment. Since the judgment has been entered on the docket, albeit one day after the notice of appeal was taken, we will consider the merits of this case. It would be a waste of judicial resources to now require that the notice of appeal be refiled in an effort to cure so technical a defect.

court are supported by competent evidence and whether the trial court committed error in any application of the law. *Brenna v. Nationwide Insurance Co.,* 294 Pa.Super. 564, 567, 440 A.2d 609, 611 (1982); *Metz Contracting, Inc. v. Boxer Heights, Inc.,* 261 Pa.Super. 177, 180, 395 A.2d 1373, 1375 (1978). The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. *Eddystone Fire Co. No. 1 v. Continental Insurance Cos.,* 284 Pa.Super. 260, 263, 425 A.2d 803, 804 (1981). When an appellate court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all the evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. *Brenna v. Nationwide Insurance Co., supra* 294 Pa.Super. at 567–68, 440 A.2d at 611; *Courts v. Campbell,* 245 Pa.Super. 326, 331, 369 A.2d 425, 428 (1976).

The sellers assert that the trial court erred in its ultimate conclusion that sellers were liable to the buyers by reason of (1) a failure of that court to properly apply the parol evidence rule, and (2) the determination of the trial court that there was sufficient evidence to support a finding that the sellers had engaged in fraudulent conduct. The evidence at the trial established that approximately two and one-half months expired between the date that the agreement to purchase was executed and the date of the settlement and that the buyers inspected the house on but two occasions, first, on the day prior to the date of execution of the agreement to purchase and second, immediately preceding the settlement. The buyers on the first visit inspected both the basement and the garage, the two areas of the house where the court found that the sellers had concealed defects. Although the buyers detected a musty odor in the basement, they could not see any water stains on either the floor or walls of the basement since: (1) most of the floor was covered by a large area rug; (2) there were approxi-

mately eight posters which measured 36″ × 36″ on the basement walls; and (3) numerous large boxes of ceiling tiles were lined along the perimeter of the basement floor. The buyers also inspected the garage on the occasion of this first visit and found it to be in a generally cluttered condition; in addition, the one wall of the garage, the back wall where a structural defect was discovered after settlement, was paneled, the paneling was obscured by pool equipment hung on the wall and access to the panel was blocked by a work bench.

The buyers subsequently requested permission to reinspect the property on five different occasions. The sellers, however, refused these requests and limited buyers to one inspection immediately prior to settlement. At the time of this second inspection, the condition of the basement was virtually unchanged and the defective garage wall was still covered with the paneling. Thus, neither of the defects were discovered by the buyers prior to settlement. The buyers discovered soon after settlement (1) that the basement had severe water damage that they had not been able to discover during their inspection of the property, (2) that the basement became inundated by six inches of water following a normal rainfall, and (3) that the plywood covering on the one wall of the garage concealed a cracked and bulging wall that would have alerted the buyers to the structural defect there present.

The sellers argue that the parol evidence rule required the court to exclude testimony concerning the behavior of sellers which composed the basis for the claim of buyers that sellers had engaged in fraudulent activity. The purpose of the parol evidence rule is "to preserve the integrity of written agreements by refusing to permit the contracting parties to attempt to alter the import of their contract through the use of contemporaneous [or prior] oral declarations." *Rose v. Food Fair Stores, Inc.*, 437 Pa. 117, 120–21, 262 A.2d 851, 853 (1970); *LeDonne v. Kessler*, 256 Pa.Super. 280, 286, 389 A.2d 1123, 1126 (1978). The sellers specifically argue that the parol evidence rule bars evidence

of the defects discovered by buyers after the execution of the agreement of sale. In support of this argument, the sellers refer to the following integration clause which was contained in the agreement of sale entered into by the parties.

It is understood that Buyer has inspected the property or hereby waives the right to do so and he has agreed to purchase it as a result of such inspection and did not because of or in reliance upon any representation made by the Seller or any officer, partner, or employee of Seller, or by the agent of the Seller or any of the latter's salesmen and employees, or by a cooperating broker, or any of his salesmen and employees and that he has agreed to purchase it in its present condition unless otherwise specified herein. It is further understood that this agreement contains the whole agreement between the Seller and the Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this agreement shall not be altered, amended, changed or modified except in writing executed by the parties hereto.

At trial the buyers testified that they were fraudulently induced to purchase the property as a result of the concealment of defects by the sellers. Whatever uncertainty may have existed in Pennsylvania appellate decisions concerning application of the parol evidence rule in suits where it is alleged that one of the parties to a contract was fraudulently induced to enter a contract through fraud or misrepresentation,[2] the clarification provided by this Court in *LeDonne v. Kessler, supra,* appears to have become the prevailing view. Our Court there enunciated a test for determining the application of the parol evidence rule in these situations by balancing "the extent of the party's knowledge of objec-

**2.** *See Berger v. Pittsburgh Auto Equipment Co.,* 387 Pa. 61, 127 A.2d 334 (1956); *Bardwell v. Willis Co.,* 375 Pa. 503, 100 A.2d 102 (1953); *See also National Building Leasing, Inc. v. Byler,* 252 Pa.Super. 370, 381 A.2d 963 (1977); *Betz Laboratories, Inc. v. Hines,* 647 F.2d 402 (3rd Cir.1981).

tionable conditions derived from a reasonable inspection against the extent of the coverage of the contract's integration clause in order to determine whether that party could justifiably rely upon oral representations without insisting upon further contractual protection or the deletion of an overly broad integration clause." *Id.* 256 Pa.Super. at 294, 389 A.2d at 1130. (footnote omitted).

The *LeDonne* case concerned an attempt by the purchasers of real property to recover damages incurred as the result of fraudulent misrepresentations of the sellers. The Common Pleas Court granted a summary judgment in favor of sellers on the ground that the parol evidence rule prohibited oral testimony which contradicted the clause in the agreement of sale which stated, "The parties have knowledge of the physical appearance of the land and buildings and of the value thereof and there are no verbal representations as to character or quality." The opinion of our esteemed colleague, Judge J. Sydney Hoffman, concluded that evidence to contradict this clause was admissible after balancing the extent of the knowledge that the buyers had of the defects against the nature of the integration clause in the agreement. The first claimed defect in the property, namely, a damaged septic system, was not ascertainable by reasonable inspection, and the court concluded that the integration clause only denied the existence of verbal representations as to the character or quality of land and building conditions that were reasonably apparent from the inspection of the premises. The second alleged defect, namely, a water leakage problem, was discovered by the buyers upon their inspection of the property. The integration clause did cover this type of observable physical condition and, therefore, the buyers could not justifiably rely upon the oral representations of the seller that there was no water problem without insisting upon further contractual protection or the deletion of the overly broad integration clause.

The application of the balancing test formulated in *LeDonne* to the facts in the case we here consider leads us

to conclude that evidence of fraud in the inducement of the contract was not barred by the parol evidence rule. The water damage in the basement and the bulge in the garage wall were not reasonably apparent to the buyers. Instead, the water damage in the basement was hidden by a large area rug, numerous large posters on the walls and paneling. Similarly, the defect in the garage was hidden by paneling, pool equipment hung on this paneling and a work bench placed in front of the pool equipment. On the other hand, the integration clause in the agreement of sale in the instant case provided in pertinent part that: the agreement contained the whole agreement between the parties; the buyers inspected the property and agreed to purchase it as a result of such inspection and not in reliance upon any representation made by the sellers; and the buyers agreed to purchase it in its present condition unless otherwise specified in the agreement. We interpret this clause, as we interpreted the same type of clause in *LeDonne, supra,* to deny only "the existence of verbal representations as to the character or quality of land and building conditions reasonably apparent from an inspection of the premises." *LeDonne, supra* 256 Pa.Super. at 291, 389 A.2d at 1129. *See generally Berger v. Pittsburgh Auto Equipment Co., supra* (Parol evidence not barred where the contractual integration clause only covered conditions reasonably apparent from an inspection of the premises and the alleged defects could not be discovered by visual inspection but required expert testimony.) Thus, a consideration of the balance between the buyers' knowledge of the defects and the integration clause leads us to conclude that the clause does not bar evidence of the alleged fraudulent concealments in the basement and garage.

The sellers also argue that the evidence does not support the finding of the trial court that they had fraudulently concealed known material defects from the buyers. Fraud must be proven by "clear, precise and undubitable" evidence. *Highmont Music Corp. v. J.M. Hoffmann Co.,* 397 Pa. 345, 350, 155 A.2d 363, 366 (1959); *Glanski v.*

*Ervine,* 269 Pa.Super. 182, 191, 409 A.2d 425, 430 (1979). "Fraud consists of anything calculated to deceive, whether by single act, or a combination, or by suppression of truth, or a suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, or word of mouth, or look or gesture." *Frowen v. Blank,* 493 Pa. 137, 143, 425 A.2d 412, 415 (1981). *Citing In re McClellan's Estate,* 365 Pa. 401, 407, 75 A.2d 595, 598 (1950); *In re Reichert's Estate,* 356 Pa. 269, 274, 51 A.2d 615, 617 (1947). The following elements are necessary to prove a fraud and deceit action in trespass:

(1) a false representation of an existing factor, *Fidurski v. Hammill,* 328 Pa. 1, 195 A. 3 (1937); (2) if the misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction involved; while if the misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is not a requisite to the action, *DeJoseph v. Zambelli,* 392 Pa. 24, 139 A.2d 644, *affirming* 11 D. & C.2d 447, (1958); (3) scienter, which may be either actual knowledge of a truth or falsity of representation, reckless ignorance of the falsity of the matter, or mere false information where a duty to know is imposed on a person by reason of special circumstances, 16 P.L.E. Fraud § 7; (4) reliance, which must be justifiable, so that common prudence or diligence could not have ascertained the truth; and (5) damage to the person relying thereon.

*Shane v. Hoffmann,* 227 Pa.Super. 176, 182, 324 A.2d 532, 536 (1974).

The instant complaint in trespass and assumpsit set forth allegations of active concealment of defects in the property that was sold. "[A]ctive concealment of defects known to be material to a purchaser is legally equivalent to affirmative misrepresentation." *Eckrich v. DiNardo,* 283 Pa.Super. 84, 90 n. 5, 423 A.2d 727, 729 (1980); *National Building Leasing, Inc. v. Byler,* 252 Pa.Super. 370, 376, 381 A.2d 963, 966 (1977). *See* Restatement (Second) Contracts, § 160 (1981); Restatement (Second) Torts, § 550 (1977). The situ-

ation we here consider is analogous to that present in *Miller v. Bare*, 457 F.Supp. 1359 (W.D.Pa.1978), where home buyers brought suit against the sellers for various misrepresentations made relating to the property. After settlement was concluded, the buyers discovered a large area along a wall of the recreation room which had stain marks from water leakage and which had previously been covered up by a work bench that the sellers had left on the premises. The buyers asked whether there were any major problems with the property and the sellers replied that there were a few minor defects, but failed to mention the water leakage problem. The court noted that the buyers could not have discovered the problem on their own since the weather was dry when they were inspecting the house and the damage from the flooding was concealed by the work bench. The court concluded that the sellers had deliberately concealed the water problem and misrepresented the condition of the house.

The *Miller* case differs somewhat from the instant case since in *Miller* there was testimony at trial that the sellers had told the buyers that there were no major problems with the property, whereas in the instant case, the theory of fraud pursued by the buyers rests solely on acts of concealment. It is clear, of course, that concealment can be a sufficient basis for a finding that a party engaged in fraudulent conduct, provided that the other earlier mentioned elements of fraud are established. *See National Building Leasing, Inc., supra.* There was sufficient evidence to form the basis for the findings of the court adverse to the sellers since: (1) the sellers were aware that there had been a water leakage problem in the basement for one year prior to the inspection and the sellers successfully attempted to conceal the leakage problem from the buyers; (2) the sellers had concealed the cracked walls in the garage by first nailing plywood over the defective area and then using the work bench to limit access and the pool equipment to obscure the walls; and (3) the buyers had conducted a reasonable inspection but such an inspection

could not have revealed the structural damage in the garage wall nor the water problem in the basement, since the weather was dry when they inspected the house and the existing water damage was concealed by the strategic placement of boxes, posters and furniture in such a way as to hide the damage. We are not persuaded that it was error for the court to determine that the buyers justifiably relied upon their inspection of the premises and, as a result of the acts of concealment by the sellers, the buyers were not able to discover the defects.

We next address the contention of the sellers that the trial court erred when it found that the buyers were entitled to damages equivalent to the cost of the replacement of electrical fixtures that the sellers had removed from the property.[3] Since the sellers do not argue that the trial court erred when it determined that they breached the contract by removing the electrical fixtures, our discussion is limited to the amount of damages awarded for these fixtures. Claims for recovery are governed by the following principle:

> The measure of recovery and the method of evaluation that are adopted should in every case be so adjusted as to attain as nearly as possible the purpose of our system of remedial justice. This purpose is to put the injured party in as good a position as the promised performance would have put him, having regard both to the reasonable foreseeability of the harm and to the extent that it could reasonably have been avoided by the injured party himself.

5 *Corbin on Contracts* § 1005 at 63 (1951).

A party to a contract who commits a breach must make compensation therefor to the injured party. *Corbin on Contracts, supra,* § 992 at 5. The cost of making the repairs, which in this case was the replacement of the electrical fixtures, was the measure of damages. *See Briskman v. Greenhill Farms of Lower Merion, Inc.,* 186

---

**3.** The sellers do not raise on appeal the issue of damages with respect to the basement and garage.

Pa.Super. 482, 142 A.2d 504 (1958). The award of damages by a trial court is constrained by the principle that no more can be recovered by damages than will fully compensate the party injured. *Massachusetts Bonding and Ins. Co. v. Johnston and Harder, Inc.*, 343 Pa. 270, 22 A.2d 709 (1941); *Myer Feinstein Co. v. DeVincent*, 151 Pa.Super. 254, 30 A.2d 221 (1943). Rather, "[w]here there is a basis in the evidence for a reasonable computation of the damages suffered considering the nature of the transaction, a verdict may be based thereon, though there may be involved some uncertainty about it". *Weinglass v. Gibson*, 304 Pa. 203, 207, 155 A. 439, 440 (1931); *Myer Feinstein Co., supra* 151 Pa.Super. at 258, 30 A.2d at 223. (citations omitted).

The buyers testified that by reason of the removal of the fixtures by the sellers, it became necessary for the buyers to spend $450.00 to purchase electrical fixtures. The sellers now argue that "the record is devoid of evidence that the replacement fixtures were similar to those fixtures removed and of the diminished value of the real estate." (Brief of Appellant at 23). Although the sellers presented testimony concerning the price paid for the removed fixtures when originally purchased, they presented no evidence as to the condition of the fixtures at the time of removal. We note that the condition of the removed fixtures was peculiarly within the knowledge of the sellers and that they offered no evidence as to that condition or the value in that condition. Counsel for the sellers did not attempt by cross-examination of the witness or otherwise to impeach the reasonableness of these figures. *See Myer Feinstein Co., supra.* There was evidence presented by the buyers, however, as to replacement costs for the fixtures and, thus, there is evidence from which the trial court could reach its conclusion as to the damages sustained by the buyers as a result of the breach. *See Davis v. Jackson*, 264 Md. 668, 287 A.2d 768 (1972). We conclude that there was a basis in the evidence for the award of damages in the

amount of $450.00 for the removal of the fixtures by the sellers.

Judgment affirmed.