653 A.2d 663

**1726 CHERRY STREET PARTNERSHIP by its General Partner, 1726 CHERRY STREET CORPORATION, and Sonia Lopatin, Barton J. Winokur, and Michael Lopatin, Trustees of Residuary Trust of Ralph Lopatin Under Deed of Trust Dated October 10, 1967, Appellants,**

v.

**BELL ATLANTIC PROPERTIES, INC.**

Superior Court of Pennsylvania.

Argued Feb. 16, 1994.

Filed Jan. 13, 1995.

142

Willima T. Hangley, Philadelphia, for appellants.

Jon A. Baughman, Philadelphia, for appellee.

Before CIRILLO, BECK and JOHNSON, JJ.

BECK, Judge.

In this contract case we revisit the issue of whether the parol evidence rule precludes admission of evidence of allegedly fraudulent misrepresentations made during negotiations leading to written agreements, where the alleged misrepresentations concern a subject specifically dealt with in the agreements. We conclude that the bar of the parol evidence rule applies and, therefore, affirm.

The genesis of this case was a commercial transaction in which two parcels of Center City Philadelphia real estate were sold and conveyed by plaintiffs—appellants, Barton J. Winokur, Sonia Lopatin, Michael Lopatin and the 1726 Cherry Street Partnership (the "Lopatins"), to defendant—appellee, Bell Atlantic Properties, Inc. ("Bell Atlantic"). These parcels were part of an assemblage of land on which Bell Atlantic ultimately constructed a large office building known as the "Bell Atlantic Tower." The Lopatins commenced this action shortly after the consummation of the sale of their parcels, alleging that they were the victims of fraudulent conduct by Bell Atlantic in the course of the negotiations concerning the sale.

In order to acquire the land on which Bell Atlantic Tower was built, Bell Atlantic purchased land separately from several different owners, one of which was the Lopatins. The essence of the Lopatins' claim is that during the course of the negotiations which preceded the execution of written agreements of sale between the parties, Bell Atlantic orally misrepresented its intentions with respect to its possible acquisition of another

parcel of land owned by CIGNA (the "CIGNA Parcel") and located in the vicinity of the Lopatin parcels. This parcel ultimately was purchased by Bell Atlantic and included in the assemblage of land on which the Bell Atlantic Tower was constructed. The Lopatins contend that had they been aware of Bell Atlantic's real intentions with respect to the CIGNA Parcel, they would have insisted upon a substantially higher price for the Lopatin parcels or would not have sold them at all.

According to the Lopatins, they began their negotiations with Bell Atlantic by taking the position that they wished to be the last seller of parcels of land within the scope of the intended assemblage of land that Bell Atlantic was seeking to acquire because the last seller would receive the highest price for its land. They allege that they only agreed to be the first to sell and to accept the price reflected in the written agreements because Bell Atlantic agreed to the inclusion of what is commonly referred to as a "Most Favored Nation" clause in those agreements. In this clause, Bell Atlantic agreed that the price to be paid to the Lopatins for their parcels would be adjusted upward retroactively if Bell Atlantic later acquired certain other enumerated parcels in the proposed assemblage at a price in excess of certain stated target prices.

At the heart of this dispute lies the fact that the other parcels in the proposed assemblage that were made subject to the "Most Favored Nation" clause did not include the CIGNA Parcel. Moreover, the written agreements of sale included the following "integration" clause:

> This instrument constitutes the entire agreement between Seller and Purchaser and there are no other agreements, understandings, representations or warranties between them except as set forth herein.

The Lopatins explain the omission of any mention of the CIGNA Parcel by claiming that Bell Atlantic orally misrepresented to the Lopatins that the CIGNA Parcel was not to be included in the assemblage and that Bell Atlantic had no intention of buying it. Thus, the Lopatins contend they had

no reason to insist on any reference to the CIGNA Parcel in their written agreements of sale. When Bell Atlantic ultimately did purchase the CIGNA Parcel for a price in excess of the per square foot price it had paid the Lopatins, the Lopatins commenced this action seeking damages for fraud, or reformation or rescission of the agreements of sale.

After a six-day non-jury trial conducted before the Honorable G. Craig Lord of the Court of Common Pleas of Philadelphia County, the trial court entered a verdict for Bell Atlantic, having concluded that all of the Lopatins' claims were barred as a matter of law by the parol evidence rule. The parol evidence rule generally has been described as follows:

> Where the parties to an agreement adopt a writing as the final and complete expression of their agreement, as here, evidence of negotiations leading to the formation of the agreement is inadmissible to show an intent at variance with the language of the written agreement. Alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically dealt with in the written contract are merged in or superseded by that contract. The effect of an integration clause is to make the parol evidence rule particularly applicable. Thus the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract.

*McGuire v. Schneider, Inc.*, 368 Pa.Super. 344, 348–49, 534 A.2d 115, 117–18 (1987) (citations omitted).

■ In this case, the trial court supported its application of the parol evidence rule in a thorough opinion in which the court attempted to synthesize Pennsylvania law regarding the specific question of how the rule is meant to operate in a case where, as here, fraud in the inducement of a contract is alleged. Since the trial court entered judgment for appellee as a matter of law based on the parol evidence rule alone, we review the trial court's action purely to determine if it was

based on an erroneous interpretation of the law pertinent to this specific issue.

Although the trial court discussed numerous authorities, attempting to reconcile a vast amount of Pennsylvania precedent on this issue, ultimately the court found that the opinion of the Supreme Court of Pennsylvania in *Bardwell v. The Willis Company,* 375 Pa. 503, 100 A.2d 102 (1953), controlled this case. In *Bardwell,* plaintiffs leased business premises from defendants. Plaintiffs sought to recover certain financial losses they had suffered allegedly because defendants had orally fraudulently misrepresented the condition of the leased premised. The misrepresentations allegedly were made during the negotiations leading to the execution of the lease, but were not included in the lease itself. The *Bardwell* court denied plaintiffs relief, opining:

> Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, the law is now clearly and well settled that in the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supercede the written contract is inadmissible in evidence.

There is not the slightest doubt that if plaintiffs had merely averred the falsity of the alleged oral representations, parol evidence thereof would have been inadmissible. Does the fact that plaintiffs further averred that these oral representations were *fraudulently* made without averring that they were *fraudulently* or by accident or mistake *omitted* from the subsequent complete written contract suffice to make the testimony admissible? The answer to this question is "no"; if it were otherwise the parol evidence rule would become a mockery, because all a party to the written contract would have to do to avoid, modify or nullify it would be to aver (and prove) that the false representations were *fraudulently* made.

The parol evidence rule has had a checkered career in Pennsylvania. Now that it has been well and wisely settled we will not permit it to be evaded and undermined by such tactics. Fraudulent misrepresentations may be proved to modify or avoid a written contract if it is averred and proved that *they were omitted* from the (complete) written contract by fraud, accident or mistake.

*Id.* at 506–07, 100 A.2d at 104 (citations and footnotes omitted) (emphasis in original).

 In sum, *Bardwell* permits the admission of parol evidence of representations concerning a subject dealt with in an integrated written agreement and made prior to or contemporaneous with the execution of the agreement to modify or avoid the terms of that agreement *only* where it is alleged that the parties agreed that those representations would be included in the written agreement but were omitted by fraud, accident or mistake. This is commonly referred to as "fraud in the execution" because the party proffering the evidence contends that he or she executed the agreement because he or she was defrauded by being led to believe that the document he or she was signing contained terms that were actually omitted therefrom. Such a case is to be distinguished from a "fraud in the inducement" case such as the instant one, where the party proffering evidence of additional prior representations does not contend that the parties agreed that the additional representations would be in the written agreement, but rather claims that the representations were fraudulently made and that but for them, he or she never would have entered into the agreement.

The crux of the legal dispute in this case is the continuing vitality of this clearly expressed principle. In other words, is *Bardwell* the law of Pennsylvania today? Appellants argue that although *Bardwell* never actually has been overruled, it is nevertheless no longer the law of this Commonwealth. Appellants rely on cases such as *Berger v. Pittsburgh Auto Equipment Co.*, 387 Pa. 61, 127 A.2d 334 (1956), decided shortly after *Bardwell*. In *Berger,* the defendant executed a lease of storage space, allegedly in reliance on the representation of

plaintiff lessor that the floor in the leased area was strong enough to support the weight of the goods defendant intended to store there. The alleged representation was not included in the lease, nor was it alleged that the parties ever intended that it be included. When the strength of the floor turned out to be inadequate, defendant vacated the premises and lessor sought to recover the balance of the rent due under the lease. The *Berger* court expressed the following clearly conflicting view of the parol evidence rule without ever mentioning *Bardwell*:

> Plaintiff's principal contention is that, since all preliminary negotiations and verbal agreements are merged in and superceded by a subsequent written contract, the lease constituted the entire agreement between the parties, and, in the absence of an averment of fraud, accident or mistake, its terms could not be added to nor subtracted from by parol evidence. This is a total misconception of what is involved ... [in this case]. What the petition alleges is that plaintiff made, not a contractual promise or agreement which should have been contained in the written lease and therefore could not be added to it by oral testimony, but a statement of an existing fact as to the strength of the floor for storage purposes.... A misrepresentation of a material fact, even though innocently made, if relied upon by the other party as intended that it should be, confers upon the latter the right to rescind the contract when the falsity of the representation is discovered. The purpose of the evidence here presented by defendant was not to alter or vary the terms of the written instrument, but to rescind it in its entirety because of the alleged factual misrepresentation which induced defendant to enter into it.

*Id.* at 64–65, 127 A.2d at 335 (citations omitted.) [1]

Under this theory of the parol evidence rule, a party may introduce evidence of factual misrepresentations allegedly

1. The dissent in *Berger* was authored by Justice Bell, who had written the majority opinion in *Bardwell*. Justice Bell strenuously objected to the *Berger* majority's failure even to recognize, let alone attempt to reconcile, *Bardwell* with the *Berger* decision.

made prior to execution of a written agreement if the party alleges that he was induced to enter the agreement by the misrepresentations provided, however, that the party may not thereby achieve a reformation of the agreement but rather may obtain total rescission only. In other words, the party asserting the misrepresentations must proceed on the theory that since the misrepresentation induced the agreement, the agreement is void or voidable at the option of the injured party.

In the instant case, the trial court recognized that *Berger* and certain other cases decided by the Supreme Court in the late fifties and early sixties appeared to signal a departure from *Bardwell* by admitting evidence of fraud in the inducement. *See also Highmont Music Corp. v. J.M. Hoffman Co.*, 397 Pa. 345, 155 A.2d 363 (1959). Nevertheless, the trial court in the instant case concluded that *Bardwell* was resuscitated in 1968 by the Supreme Court in *Nicolella v. Palmer*, 432 Pa. 502, 248 A.2d 20 (1968), and thereafter has been fairly consistently applied by this court except in cases involving sales of defective real estate. *See, inter alia, McGuire v. Schneider, Inc.*, 368 Pa.Super. 344, 534 A.2d 115 (1987), *aff'd per curiam*, 519 Pa. 439, 548 A.2d 1223 (1988); *LeDonne v. Kessler*, 256 Pa.Super. 280, 389 A.2d 1123 (1978).

In *Nicolella*, plaintiff contracted to build an addition to defendant's building. Plaintiff made his bid based on specifications he had reviewed a long time before he signed the construction contract and commenced work. He alleged that before he signed the contract he asked if any substantial changes in the specifications had been made and was told that none had been but if any were thereafter made, the contract price would be adjusted accordingly. After commencing work plaintiff discovered that substantial specifications changes had been made prior to his signing the contract and commencing work. Although plaintiff completed the job, he sued defendant for the additional compensation he felt he was due as a result of the changes in the specifications. *Nicolella*, 432 Pa. at 504–05, 248 A.2d at 21–22.

The Supreme Court affirmed the trial court's denial of relief to plaintiff, finding that plaintiff was attempting to vary the terms of his integrated written agreement by introducing parol evidence of an alleged prior statement by the defendant concerning a subject, *i.e.*, price terms and specifications, that *was* covered by the agreement. The Court quoted at length from *Bardwell* in support of its decision that plaintiff could not recover by relying on parol evidence of prior statements since plaintiff had not alleged that those statements were fraudulently *omitted* from the written agreement. *Id.* at 506–08, 248 A.2d at 22–23.

Appellants are incorrect when they argue that the trial court erred in construing *Nicolella* as a clear reaffirmation of the broad rule expressed in *Bardwell.* In appellants' view, *Nicolella* establishes only that a party may *not vary* the terms of an integrated written agreement based on precontractual fraudulent misrepresentations.[2] According to appellants *Nicolella* does not alter the holding in *Berger* and reaffirms the proposition that a party is not barred from *rescinding* a written agreement based on precontractual fraudulent misrepresentation.[3] In other words, parol evidence is admissible to show that the contract was void or voidable because of fraud in the inducement. Appellants attempt to demonstrate that Pennsylvania cases decided after *Nicolella* consistently apply the same principle.

**2.** The distinction is made between barring parol evidence to vary the terms of the agreement and admitting parol evidence to prove fraud in the inducement. In the former case the parties are bound by the terms of the agreement. In the latter case the theory holds that since fraud induced the agreement no valid agreement came into being. Therefore, parol evidence is admissible to show that the alleged agreement is void.

**3.** Interestingly appellants do not carry through in explaining the relevance of this distinction to this case. Appellants' complaint alternatively sought damages in the amount they would have received if the CIGNA parcel had been included in the Most Favored Nation Clause (precisely the kind of adjustment to price sought by the *Nicolella* plaintiff), *or* reformation *or* rescission of the agreement. We would understand the import of appellants' argument much better had they abandoned their plea for a price adjustment and sought rescission alone, since it would appear that they are now arguing that under *Nicolella* this is the only remedy the law will provide them.

We, too, have attempted to find consistency in Pennsylvania parol evidence cases where fraud is alleged. Our examination of the pertinent cases has led us reluctantly to conclude that no intellectually sound analysis of the cases can yield a perfectly consistent set of principles. Substantively identical cases have been decided differently because they have been analyzed under one or the other of the two starkly different conceptions of the parol evidence rule expressed in *Bardwell* or *Berger*.[4]

In deciding this case, therefore, we cannot rely on an analysis of the parol evidence rule that accounts for and reconciles every case that addresses the issue. Rather, we rely on the overriding pattern of analysis that emerges from the precedent, with particular emphasis on certain cases recently decided by this court. In these cases, the panel has applied *Bardwell* and *Nicolella*, and in one such case has expressly stated that the conflicting doctrine arising from the *Berger/Highmont* decisions would no longer appear to be the law of Pennsylvania.[5] These decisions convince us that under the facts of this case the appropriate formulation of the parol evidence rule to be applied is the one enunciated in *Bardwell*.

4. Other courts that have entered the fray on this question have reached the same conclusion. In a thoughtful opinion issued by the Court of Appeals for the Third Circuit in 1981, Judge Weis found an irreconcilable conflict between *Bardwell* and cases like *Berger* and *Highmont*. *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 407–08 (3d Cir.1981). Interestingly, the Court also concluded that *Bardwell* was poorly reasoned and, if revisited by the Supreme Court of Pennsylvania, would not be followed.

5. We note at the outset of this discussion that although the Supreme Court has not discussed the issue presented in this case in any recent decisions, we take some guidance from the fact that in *Resolution Trust Corporation v. Urban Redevelopment Authority*, 536 Pa. 219, 638 A.2d 972 (1994), the Court did cite to *Nicolella v. Palmer* in support of a general definition of the parol evidence rule. Although the Court did not render a decision on the issue of how the rule operates in the face of a fraud in the inducement claim, and ultimately decided the case before it on grounds other than the parol evidence rule, nevertheless the citation to *Nicolella* conveys at least the Court's continuing conviction of the viability of that decision.

The first and most noteworthy of these cases is *McGuire v. Schneider, Inc.*, 368 Pa.Super. 344, 534 A.2d 115 (1987), which was affirmed without opinion by the Supreme Court. *McGuire v. Schneider, Inc.*, 519 Pa. 439, 548 A.2d 1223 (1988). In *McGuire*, an employee claimed that his employer had violated the terms of employment set forth in a letter sent by the employer to the employee in which certain understandings between them had been memorialized. However, several months after the letter was sent the parties entered into a fully integrated written employment agreement containing different terms. The employee attempted to avoid exclusion of evidence of the letter under the parol evidence rule by alleging that prior to executing the employment contract the employer had orally represented to the employee that the letter actually would govern the employee's employment. 368 Pa.Super. at 347–49, 351–53, 534 A.2d at 116–17, 119. In response to this claim, the panel held:

> Appellee's argument is without merit. In *Bardwell v. Willis Company*, 375 Pa. 503, 507, 100 A.2d 102, 104 (1953), our Supreme Court held that only if a party to a contract averred that a promise had been *omitted from* the final, written contract because of fraud, accident, or mistake could parol evidence properly be admitted. After several subsequent decisions which suggested a different approach, *e.g.*, *Berger v. Pittsburgh Auto Equipment Co.*, 387 Pa. 61, 64–65, 127 A.2d 334, 335 (1956); *Nadolny v. Scoratow*, 412 Pa. 488, 491, 195 A.2d 87, 89 (1963), the Supreme Court reasserted the *Bardwell* holding in *Nicolella v. Palmer*, 432 Pa. 502, 507–8, 248 A.2d 20, 22–23 (1968). This court has subsequently held that where the assertions put forth by one party are specifically contradicted by the written agreement, *Bardwell* applies and parol evidence is admissible only to prove fraud in the execution, not the inducement, of the contract. *Abel v. Miller*, 293 Pa.Super. 6, 10, 437 A.2d 963, 965 (1982); *LeDonne v. Kessler*, 256 Pa.Super. 280, 294 & n. 10, 389 A.2d 1123, 1130 & n. 10 (1978). A party cannot justifiably rely upon prior oral representations, yet sign a contract denying the existence of those representations.

*LeDonne v. Kessler,* 256 Pa.Super. at 294 n. 10, 389 A.2d at 1130 n. 10. "If plaintiffs relied on any understanding, promises, representations or agreements made prior to the execution of the written contract . . ., they should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely, and they should have omitted the provisions which they now desire to repudiate and nullify." *Bardwell v. Willis Company,* 375 Pa. at 508–09, 100 A.2d at 105.

*Id.* at 352–53, 534 A.2d at 119–20 (emphasis in original). Thus, the *McGuire* court held that the employee could not rely on the terms of the letter that preceded, and was superceded by, the fully integrated written employment agreement. *Id.*

■ Cases decided after *McGuire* also have applied *Bardwell* to foreclose reliance on evidence of allegedly fraudulent precontractual misrepresentations. In *Iron Worker's Sav. & Loan Ass'n v. IWS, Inc.,* 424 Pa.Super. 255, 622 A.2d 367 (1993), for example, a panel of this court enforced the written terms of a promissory note against the debtor despite the debtor's allegation that the creditor had orally and fraudulently assured the debtor that the written terms of the note would not be enforced. In doing so, the court applied the *Bardwell* rule, excluding evidence of representations that are specifically contradicted by the written agreement unless fraud in the execution is alleged. *Id.* at 264–66, 622 A.2d at 372.[6]

6. A somewhat different approach has been taken in what have been referred to as "the inspection cases", namely, *LeDonne v. Kessler,* 256 Pa.Super. 280, 389 A.2d 1123 (1978), and its progeny. The *LeDonne* line of cases involve written agreements for the sale of real estate, almost always residential, that contain integration clauses. Despite these clauses, this court has in some cases permitted the admission of evidence of oral representations by sellers concerning the condition of the property that later prove to be untrue. The test enunciated for this type of case, as stated by the *LeDonne* court, requires a balancing of "the extent of the parties' knowledge of objectionable conditions derived from a reasonable inspection against the extent of the coverage of the contract's integration clause in order to determine whether that party could justifiably rely upon oral representations without insisting upon further contractual protection or the deletion of an overly broad

■ Given a tabula rasa, we might agree with appellants that the better view would permit parol evidence to avoid a contract fraudulently induced. To shield a party from the consequences of his or her fraud cannot be justified by the argument that to admit parol evidence erodes certainty in contractual relations. The Restatement (Second) of Contracts § 214 recognizes the admission of parol evidence where fraud is alleged:

> Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish ... (d) illegality, fraud, duress, mistake, lack of consideration or other invalidating cause....

*Id.*, Comment c:

> What appears to be a complete and binding integrated agreement may be ... voidable for fraud.... Such invalidating causes need not and commonly do not appear on the face of the writing. They are not affected even by a "merger" clause.[7]

■ Nevertheless, we find, as did the trial court, that the case before us is governed by *Bardwell* and its progeny and, therefore, the parol evidence offered in this case is inadmissible. In the instant case, the parties, all of whom were both sophisticated and represented by legal counsel, negotiated at

---

integration clause." *Id.* at 294, 389 A.2d at 1130. *See also Mancini v. Morrow*, 312 Pa.Super. 192, 458 A.2d 580 (1983) (applying *LeDonne* ).

Clearly this formulation of the parol evidence rule was crafted because the court realized that buyers of real estate, especially unsophisticated buyers of residential real estate, are pragmatically incapable of fully ascertaining the physical condition of the property they are buying. Sellers of such property, on the other hand, are customarily in possession of all the available information concerning the condition of the property. Thus, the court has refused to enforce the parol evidence rule in so strict a manner as to deny relief to a party who simply could not entirely protect himself from the harm he eventually suffers.

We do not find *LeDonne* instructive as to the instant case, which presents an entirely different factual scenario to which *LeDonne* clearly was not intended to apply.

7. This section of the Restatement has been interpreted to permit the admission of parol evidence to prove fraud in the inducement. *See Betz, supra*, 647 F.2d at 408; *Murray on Contracts*, at § 85A (3d ed. 1990).

some length concerning the sale of the Lopatins' parcels. There is no dispute concerning whether the subject of the CIGNA Parcel formed a part of these negotiations. Although the parties disagree as to what was said on the subject of the CIGNA Parcel, all agree that the fate of that parcel specifically was discussed. Once the parties committed their agreement to a final and fully integrated writing, however, no mention of the CIGNA Parcel was made, nor was any provision regarding that parcel intended to be included. Although the subject of the price to be paid and of a possible price adjustment based on what was paid for later acquired parcels was specifically addressed in the agreement, the agreement simply did not provide that the acquisition of the CIGNA Parcel would trigger such an adjustment. The agreement contains an exclusive list of the parcels as to which a price adjustment might be triggered and the CIGNA Parcel is not one of them. Moreover, the agreement states that it is the parties' entire agreement and that there are *no* other representations or understandings between them.

Under these circumstances what the Lopatins seek to do is exactly what the Pennsylvania parol evidence rule forbids: to admit evidence of a prior representation in a fully integrated written agreement. If the Lopatins intended to rely on what they now contend was a centrally important representation conveyed by Bell Atlantic in the course of the negotiations over a multimillion dollar commercial real estate transaction, then the Lopatins should have insisted that the representation be set forth in their integrated written agreement. They are now barred from eliciting parol evidence that they were fraudulently induced into entering the contracts.

Judgment affirmed.

JOHNSON, J., files a concurring statement.

JOHNSON, Judge, concurring.

I readily concur in so much of my distinguished colleague's Opinion as finds continuing validity in the parol evidence rule and in that rule's preclusion of evidence of allegedly fraudu-

lent misrepresentations made during negotiations leading to written agreements. I find myself unable to agree with my colleague's view that Pennsylvania law should be modified to permit admission of parol evidence of fraud in the inducement rather than limit the admission of such evidence to fraud in the execution.

As Judge Beck recognizes, the most distinguished trial court entered judgment for Bell Atlantic Properties, Inc., as a matter of law, based upon the parol evidence rule alone. We are not faced with Bell Atlantic being shielded from its own fraud, since the trial court was not required to reach that issue. Had the trial court been required to confront the credibility issues, it might very well have found that the Lopatins' testimony was less than credible, in which case the allegation of fraud would have collapsed.

Moreover, I am concerned that we would allude to the Restatement (Second) of Contracts § 214, to which no mention or citation has previously been made by either this Court or our state supreme court. I do not understand my colleague to be adopting that section through this Court's Opinion in this case, and I do not believe the facts have been presented, nor a record developed, that would support an argument for such adoption.