# Gordon v. McManus

C.P. of Monroe County, No. 1774 CIVIL 2004.

*Michael D. Collins*, for plaintiffs.
*George W. Westervelt*, for defendants.

WILLIAMSON, *J.*, February 20, 2013—This matter comes before us on a motion for summary judgment filed by William and Joann McManus, (hereafter, "defendants"), on September 5, 2012. In their motion for summary judgment, defendants assert that plaintiffs Joseph and Tonia Gordon's (hereafter, "plaintiffs") claims must be dismissed because plaintiffs have failed to establish they justifiably relied on defendants' representations, that they signed releases which did not offer any warranty as to the condition of the property, and that they agreed the sales agreement contained the whole of the agreement without integrating the seller's

property disclosure statement ("SPDS") or any other representations allegedly made by defendants.

Plaintiffs commenced this action by filing a domplaint on March 16, 2005, alleging the following: defendants committed fraud, fraud by concealment, violation of the Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), and negligent misrepresentation. They claim defendants knew of water intrusion problems, the presence of mold related bioaerosols, structural defects, and damage to the residence, all of which they allege existed prior to the sale. Plaintiffs further allege defendants misrepresented the condition of the house in their seller's property disclosure statement ("SPDS"), as well as made oral representations that the basement was suitable as an additional living space. Plaintiffs seek to either recover damages or obtain rescission regarding their purchase from McManus of a residence located at 145 Big Ridge, Country Club of the Poconos, East Stroudsburg, Monroe County, Pennsylvania.

On June 7, 2005 defendants filed their answer and new matter to plaintiffs' complaint, as well as a joinder complaint against the home's builder, Meadow Run Builders, Inc.

On June 10, 2011, Fitzgerald defendants filed a motion for summary judgment as to all claims and cross claims, as well as the McManus defendants' contribution and indemnification claims asserted against them. On June 28, 2012, this court granted the Fitzgerald defendants' motion for summary judgment.

On November 5, 2012, defendants filed the motion for summary judgment and brief in support thereof that is presently at issue before this court. Plaintiffs filed their response and brief in opposition thereof on November 9, 2012. Plaintiffs contend that defendants knew of repeated occurrences of basement flooding and actively concealed problems with the foundation, the basement, and cracking drywall. Defendants argue that plaintiffs have failed to prove they justifiably relied on defendants' representations. Defendants contend that plaintiffs signed releases which stated the sellers did not offer any warranty as to the condition of the property, and they agreed that document contained the whole of the parties' agreement without integrating the SPDS or any other representations made by defendants.

## DISCUSSION

When a party is seeking summary judgment, we must review the record in the light most favorable to the non-moving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Washington v. Baxter*, 719 A.2d 733, 737 (Pa. 1998), *citing, Pennsylvania State University v. County of Centre*, 615 A.2d 303, 304 (Pa. 1992). Summary judgment is only appropriate and will only be granted in cases that are free and clear from doubt. *Id.*, *citing Marks v. Tasman*, 589 A.2d 205 (Pa. 1991). Although the record is viewed in the light most favorable to the non-moving party, it is still pertinent that the nonmoving party "adduce sufficient evidence on an issue essential to his case on which he bears the burden of proof such that a jury could

return a verdict in his favor." *Id., quoting Ertrel v. Patriot-News Co.*, 674 A.2d 1038, 1042 (Pa. 1996). Failure to do so will establish that there is no genuine issue of material fact for the jury to determine and entitle the moving party to judgment as a matter of law. *Id.*

In order to establish fraud a plaintiff must show the following:

> "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Blumenstock v. Gibson*, 811 A.2d 1029, 1034 (Pa. Super. 2002), *quoting Sewak v. Lockhart*, 699 A.2d 755, 759 (Pa. Super. 1997) (citations omitted).

Similarly, in order to establish negligent misrepresentation, a plaintiff must show the following:

> "(1) misrepresentation of a material fact; (2) made under circumstances in which the declarant ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance upon the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999), *citing Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).

Additionally, under the UTPCPL, a plaintiff must prove all the same elements as fraud. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425 (Pa. 2004).

The common element to all of plaintiffs' claims is justifiable reliance. The justifiable reliance on representations depends on the knowledge of the recipient. If the buyer "knew or should have known the information supplied was false," the buyer's reliance is not justifiable. *Porreco v. Porreco*, 811 A.2d 566, 571 (Pa. 2002), *citing Scaife Co. v. Rockwell-Standard Corp.*, 285 A.2d 451 (Pa. 1971). The recipient of a misrepresentation is required to use his senses and is barred from recovery if he "blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Silverman v. Bell Sav. & Loan Ass'n.*, 533 A.2d 110, 115 (Pa.Super. 1987).

It is not sufficient, however, to merely assert that a statement is "fraudulent" and that reliance on the statement induced some action on the party's behalf, nor is it enough to aver that a knowingly false statement was made for the purpose of misleading another into reliance upon it. *Blumenstock* at 1038; *see also Gruenwald v. Advanced Computer Applications, Inc.*, 730 A.2d 1004, 1014 (Pa. Super. 1999); *Sewak*, at 759. Accordingly, "[u]nsupported assertions and conclusory accusations" of fraud are not sufficient to establish the existence of genuine issues of material fact. *Id.*, *citing, Gruenwald* at 1014.

In real estate transactions specifically, our courts have concluded that "fraud arises when a seller knowingly makes a misrepresentation, undertakes a concealment calculated to deceive, or commits non-privileged failure to disclose." *Sewak*, at 759. Within that definition two distinctive types of fraud arise; "fraud in the execution" and "fraud in

the inducement." *See Blumenstock* at 1037. The former occurs when a party omits certain representations from the written agreement despite previous discussions and/ or promises that the representations would be included in the agreement. *Id., citing Cherry Street Partnership v. Bell Atlantic Properties, Inc.*, 653 A.2d 663, 666 (Pa. Super. 1995). The latter transpires when the representations are fraudulently made so as to induce the party to enter into the agreement and the buyer subsequently asserts "but for" those representations he would never have entered into the agreement. *Id.*

The case before this court appears to be a claim of fraud in the inducement. In *Blumentstock*, the Superior Court reviewed the effect of an integration clause in a real estate transaction when a plaintiff was asserting a claim of "fraud in the inducement," to determine whether evidence of verbal representations were admissible. In doing so the court relied extensively on the balancing test put forth by the court in *LeDonne v. Kessler*, 389 A.2d 1123 (Pa. Super. 1978). The necessity of this test arises when material representations are allegedly made prior to the signing of the sales agreement and those representations are either false or misleading. If the signed sales agreement contains an integration clause, the parol evidence rule prevents the buyer from presenting evidence of the verbal representation if said representation was left out of the sale agreement. The question then becomes whether the parol evidence rule renders the false or misleading representations inadmissible and who can enforce the integration clause.

Simply stated, if a verbal representation is made as

to the character or quality of the land and/or building conditions and said conditions are reasonably apparent from the inspection of the premises, the parol evidence rule will exclude evidence of the verbal representation if the representation is not included in the written sale agreement and the sale agreement contains an integration clause. *See Mancini v. Morrow*, 458 A.2d 580, 584 (Pa. Super. 1983) (distinguishing between a damaged septic system which the buyer could not have reasonably inspected, and a water leakage problem that was discovered by the purchaser during the course of inspection the latter of which constituted an observable physical condition rendering any verbal representation of that condition inadmissible.) Therefore, if a party is provided an opportunity to view and inspect the objectionable condition at issue and does not insist on further contractual protection or deletion of an overly broad integration clause, the integration clause in the sales agreement will remain in effect and the parties will be bound to the language of the contract. *Id.*

In *Blumenstock*, the plaintiffs viewed the property prior to the signing of the sale agreement and allegedly voiced concern over the fact that two sump pumps were located on the property. *Id.* at 1032. The concern was then relayed to the seller's agent who informed the plaintiffs that the sump pumps were only installed as a precautionary measure. *Id.* The plaintiffs interpreted that representation as meaning that the sump pumps were unnecessary and never ran. *Id.* The plaintiffs subsequently signed the sale agreement and moved into the home. *Id.* Soon thereafter, the circuit breaker controlling the sump pumps was

interrupted during a period of heavy rain, and by the time the plaintiffs uncovered the problem their basement was covered with several inches of water. *Id.* The plaintiffs thereafter brought suit against the seller and the seller's agent arguing that they would not have purchased the property had they known that the sump pumps were actually used from time to time to prevent the basement from flooding. *Id.*

Building on the analysis used by the court in *Mancini,* the trial court determined that the plaintiffs were put on notice of an objectionable condition because they conducted a reasonable inspection of the property and saw the sump pumps and inquired about their use. *Id.* at 1038. Consequently, the trial court ruled that the plaintiffs should have sought to include language regarding the sump pumps or ask to delete the overly broad integration clause before they signed the agreement. *Id.* Since the plaintiffs failed to do so, the trial court determined that they were bound by the terms of the contract and any verbal representations made before the contract they signed were inadmissible. *Id.*

In reviewing the matter, the Supreme Court found that the trial court appropriately applied the *LeDonne* balancing test since it considered the "nature of the purported oral communications, the scope of the integration clause in the agreement of sale, and the express release contained in the Addendum "B" to that agreement." *Id.* at 1037. Accordingly, the Supreme Court affirmed the trial court's ultimate decision that the sellers and the sellers' agent had no duty to affirmatively aver the functionality of the sump

pumps since the buyer had the opportunity to observe the physical condition of the property and make reasonable inferences from the presence and location of the sump pumps. *Id.* In reaching that decision, the Supreme Court relied on the trial court's reasoning that the buyers were competent adults who were equipped with enough reasoning and logic to infer from the existence of the sump pumps that the devices might be used to remove any intruding water from the basement. *Id.* at 1038.

Since they could make the reasonable inference that the sump pumps were used to control any possible water intrusion, the court concluded that plaintiffs unjustifiably relied on the representations made to them and found that plaintiffs should have insisted language be included in the sale agreement that discussed the functional purpose of the sump pumps or request the overly broad integration clause be deleted or modified. *Id.* at 1038. Because plaintiffs failed to do so, they were barred from presenting evidence of the alleged verbal representations and were bound to the terms of the sale agreement, which included the integration clause. *Id.* Without evidence of an oral representation that the sump pumps were precautionary, the plaintiffs were unable to satisfy their burden and the defendant was entitled to summary judgment as there were no issues of material fact. *Id.*

The facts in the present matter are strikingly similar to those in *Blumenstock*. The plaintiffs were informed of their right to have the home inspected themselves by their agent, Melissa Corea, and were provided a list of several agencies who could perform an inspection of

the home.[1] [N/T Melissa Corea dep., 6/25/04, p. 25] An inspection of the property was subsequently conducted by TPA Inspection Services. Plaintiffs were present for that inspection and during that time they also conducted their own inspection of the home. While Mr. Gordon was viewing the basement, he noticed the sump pump and specifically asked the inspector "what exactly is this mechanical device."[2] [N/T Joseph Gordon dep., 11/20/10, p. 19.] The inspector informed Plaintiffs that the sump pump "was an emergency backup in case of flooding." [N/T Joseph Gordon dep., 11/20/10, p. 19] Mr. Gordon testified that at the time of the inspection he thought the existence of the sump pump was good in case water infiltration ever occurred in the basement. [N/T Joseph Gordon dep., 11/20/10, p. 20] He admitted, however, that he never questioned why a sump pump was needed if the home did not have a history of flooding as indicated on the SPDS. [N/T Joseph Gordon dep., 11/20/10, p. 20] Furthermore, Mr. Gordon admitted that he never followed up with their real estate agent, Ms. Corea, to determine whether the sump pumps were used routinely and/or relied upon heavily by the sellers. [N/T Joseph Gordon dep., 11/20/10, p. 19]

When asked about the final inspection report written by TPA, Mr. Gordon states that he himself did not read the report but believed it was read by his wife, Mrs. Gordon. [N/T Joseph Gordon dep., 11/20/10, p. 23] In

---

1. Reference to the testimony from Melissa Corea's deposition will be referred to as ["N/T Melissa Corea dep., 6/25/04, p._."]

2. Reference to the testimony from Joseph Gordon's deposition will be referred to as ["N/T Joseph Gordon dep., 11/20/10, p._."]

that Report TPA indicated the following: "NOTE! The interior foundation walls had a coat of parging at time of inspect." [Defendants' motion for summary judgment, 9/5/12, exhibit V.] There is no indication in the record, however, that plaintiffs questioned the inspector as to the meaning of that language or whether the parging on the walls indicated that there was a material defect in the foundation.

Additionally, plaintiffs were informed, on the day of the TPA inspection, by the defendants' neighbor that the basement filled with water on numerous occasions.[3] [Bishop Moore dep., 12/13/10, pg. 15-16], [N/T Melissa Corea dep., 6/25/04, p. 16] Upon hearing this information, plaintiffs contacted Ms. Corea and she contacted Fitzgerald, the agent for the defendants, to inquire about any potential water problems. [N/T Melissa Corea dep., 6/25/04, p. 16] Fitzgerald in turn questioned McManus and they stated that the only water infiltration occurred when the home was first being built before the roof had been put on the home. [N/T Melissa Corea dep., 6/25/04, p. 16] Ms. Corea relayed that information to plaintiffs and no other follow up questions were asked. [N/T Melissa Corea dep., 6/25/04, p. 16] While Ms. Corea stated she didn't recall whether plaintiffs contacted TPA after the inspection was completed to question them about any potential flooding problems, Ms. Corea states that she may have recommended plaintiffs contact TPA and felt that plaintiffs could have "very easily" call[ed] TPA" to

_____

3. Reference to the testimony from Bishop Moore's deposition will be referred to as ["N/T Bishop Moore dep., 12/13/10, p._."]

discuss the matter. [N/T Melissa Corea dep., 6/25/04, p. 23]

Plaintiffs sought no further information regarding the sump pumps, or flooding, they did not conduct additional inspections, nor, as permitted by the sale agreement, did they terminate the sale agreement. Instead, plaintiffs proceeded to close on the purchase of the property.

The sale agreement contained both a release and an integration clause. The integration clause specifically states the following:

"Unless Buyer and the seller agree otherwise, real estate is sold in its present condition. It is Buyer's responsibility to satisfy himself or herself that the condition of the property is satisfactory. Buyer may request that the property be inspected, at Buyer's expense, by qualified professionals to determine the condition of the structure or its components. Areas of concern may include but are not limited to, the following...water infiltration basement..." [Defendant's motion for summary judgment, 9/5/12, exhibit M.]

The sale agreement also contains the following release:

### 25. Release

"Buyer hereby releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICERS or PARTNERS or any one of them and any other PERSON,

FIRM, or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injuries or property damage and all of the consequences thereof, whether now known or not, which may arise from...any defects or conditions on the Property..."

## 26. Representation

"(B) It is understood that Buyer has inspected the Property before signing this Agreement (including fixtures and any personal property specifically scheduled herein), or has waived the right to do so, and has agreed to purchase the Property in its presented condition unless otherwise state in the Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, or of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein." [Defendant's motion for summary judgment, 9/5/12, exhibit U.]

Based on the language contained within the sale agreement and the facts surrounding plaintiffs' inspection of the home we find that plaintiffs conducted a reasonable inspection of the property, discovered an objectionable condition, and should have been able to infer from the existence of the sump pump on the property that the device was used to help alleviate water infiltration problems.

Accordingly, plaintiffs could not have justifiably relied on any representations allegedly made by defendants in the SPDS, or to plaintiffs' agent, Melissa Corea.

Because we find that plaintiffs could not have justifiably relied on the representations made by defendants, all four of plaintiffs' claims must fail. We find that the *LeDonne* balancing test tips in favor of defendants and plaintiffs are precluded from moving beyond the terms of the sale agreement to present any purported representations or omissions. Thus, plaintiffs are unable to establish fraud as they are precluded from presenting evidence of a representation, which must be present to prove the existence of fraud. In failing to present facts establishing fraud, plaintiffs' claim of violation of the UTPCPL cannot be met either. Plaintiffs raised the issue of violation of the Real Estate Seller's Disclosure Act of 68 Pa. C.S.A. §7101; however, this cause of action was not raised in defendants' complaint and cannot be considered in this motion for summary judgment. It is noted that the plaintiffs have since filed a motion to amend their complaint to add a claim under 68 Pa. C.S.A. §7101, which we have ruled upon simultaneously with this matter. Consequently, we conclude that summary judgment is appropriate and grant defendants' motion for dummary judgment against the plaintiffs and for the McManus defendants.

## ORDER

And now, February 20, 2013, the motion for summary judgment of defendants, William McManus and Joann

McManus, against the plaintiffs is granted. The plaintiffs' suit is dismissed.