LYON FINANCIAL SERVICES, INC., d/b/a U.S. Bank Portfolio Services as Agent for U.S. Bank, N.A., as Trustee and Collateral Agent, Plaintiff

v.

TIDC–IRVING, INC., Defendant

and

Lyon Financial Services, Inc., d/b/a U.S. Bank Portfolio Services as Agent for U.S. Bank, N.A., as Trustee and Collateral Agent, Plaintiff

v.

TIDC–Grapevine, Inc., the Medical Shop Inc. d/b/a Texas Imaging Diagnostic Center, TIDC, Inc., and Emil Cerullo, Defendants

Nos. CIV.A.04–2086, CIV.A.04–2087.

United States District Court, E.D. Pennsylvania.

Sept. 8, 2005.

David W. Debruin, Bifferato Gentilotti &
Biden, P.A., Wilmington, DE, Joel S. Todd,
Saltz Polisher PC, Wayne, PA, Sherry D.
Lowe, Lamm Rubenstone Totaro & David
LLC, Trevose, PA, David E. Ross, Rachel
Hollander, Brown Raysman Millstein
Felder & Steiner LLP, New York, NY, for
Plaintiff.

Bret P. Flaherty, Berger and Montague,
P.C., Philadelphia, PA, Kiprian E. Men-
drygal, Geoffrey S. Harper, Fish & Rich-
ardson PC, Dallas, TX, for Defendants.

### MEMORANDUM OPINION
### AND ORDER

RUFE, District Judge.

Plaintiff Lyon Financial Services, Inc.,
d/b/a U.S. Bank Portfolio Services, an
agent for U.S. Bank, N.A. ("Lyon") moves
for partial summary judgment in both of
these consolidated diversity actions for
breach of contract.[1]

DVI Financial Services, Inc. ("DVI"),
Lyon's assignor, and Defendants entered
into a series of agreements, consisting of

---

1. Defendant Emil Cerullo is the sole share-
holder and authorized agent of corporate De-
fendants TIDC–Grapevine, Inc., The Medical
Shop, Inc., d/b/a/ Texas Imaging and Diagnos-
tic Center ("Medical Shop"), TIDC, Inc., and
TIDC–Irving, Inc.

loans, promissory notes, guarantees, and assignment of rights related to medical equipment. The relevant agreements are attached to the Complaints and Plaintiff's motions for partial summary judgment. The loans were financed and serviced by DVI. After DVI filed for Chapter 11 bankruptcy in August 2003, Plaintiff was appointed the successor servicer for the outstanding DVI loans. Plaintiff seeks to collect on various loans, guarantees, and promissory notes, alleging that Defendants failed to make payments due under the agreements at issue. Plaintiff presently moves for summary judgment on breach of contract and breach of guarantee claims in the TIDC–Grapevine action,[2] as well as breach of contract claims in the TIDC–Irving action.

The familiar summary judgment standard applies.[3] Defendants argue that the extent of their liability is a disputed issue of material fact because DVI breached the agreements by failing to provide promised financing. Defendants also state that several of the agreements attached to Plaintiff's Complaints are not authentic documents because they contain incorrect riders describing collateral. Nonetheless, Defendants admit liability on several of Plaintiff's claims, and do not dispute that Cerullo signed all of the documents at issue on their behalf. The Court addresses each of these issues below.

## I. The TIDC–Grapevine Action (No. 04–2087)

Plaintiff alleges that Defendants defaulted on four promissory notes under two separate loan agreements, discussed in more detail below. Relying on attached affidavits,[4] Plaintiff argues that it established all the required elements of a breach of contract under Pennsylvania law, i.e. that the loan agreements and promissory notes in question were binding contracts, and that Defendants defaulted on their obligation to make certain monthly payments.[5]

### A. Notes 6 & 2

#### 1. Grapevine Loan—Note 6 Claims

Pursuant to several assumptions and assignments of a Master Loan Agreement,

---

**2.** Plaintiff's remaining claims in both actions are for replevin and assemblage/turnover of equipment.

**3.** Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**4.** Plaintiff relies on (1) an affidavit by Jane Fox, Plaintiff's Director of Operations, setting out the history of the agreements between the parties, Defendants' defaults under these documents, and Plaintiff's damages; and (2) an affidavit by Rachel Hollander, Plaintiff's counsel, to support its claim that Defendants admitted default under all of the agreements at issue, except for Note 7, as of July 15, 2003 (and as of February 2004 under Note 7). When a motion for summary judgment is supported by affidavits, the party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

**5.** *See Ware v. Rodale Press Inc.*, 322 F.3d 218, 225 (3d Cir.2003) (under Pennsylvania law, a breach of contract claim must establish (1) existence of a contract, including its essential terms; (2) the defendant's breach of a contractual duty; and (3) resultant damages).

contract number 2989, Defendants Medical Shop and TIDC–Grapevine assumed liability for payments due to DVI under schedules 2989–001, 2989–002, and 2989–003 (the "Grapevine Master Loan").[6] Cerullo signed an unconditional guarantee of Defendants' payment obligations pursuant to the Grapevine Master Loan.[7] On March 26, 2003, the parties executed a promissory note in the total amount of $3,556,635.78 ("Note 6").[8]

Plaintiff moves for summary judgment on Counts 1–2 of the Complaint, which assert breach of contract claims against TIDC–Grapevine, Medical Shop and a breach of guarantee claim against Cerullo, for Defendants' alleged failure to make scheduled monthly payments under Note 6 as of August 1, 2003. Plaintiff seeks principal in the amount of $3,556,635.78, plus interest accrued prior to default, interest at the rate of 18% per annum since date of default, late charges, and costs and expenses, including reasonable attorneys' fees.

### 2. *The Medical Shop Loan—Note 2 Claims*

On September 19, 2002, pursuant to a Master Loan Agreement between DVI and Medical Shop, contract number 3014, allowing the parties to enter into one or more promissory notes (the "Medical Shop Master Loan"),[9] DVI and Medical Shop executed a promissory note in the total amount of $3,517,195.17 ("Note 2").[10] Plaintiff moves for summary judgment on counts 13–14 of the Complaint, which assert a breach of contract claim against Medical Shop and a breach of guarantee claim against TIDC, Inc. for Defendants' alleged failure to make monthly payments due under Note 2 as of July 30, 2003. Plaintiff seeks remaining principal in the amount of $2,081,175.55, plus interest etc.

### B. Discussion

#### 1. *Parol Evidence of DVI's Alleged Misrepresentations*

Defendants do not deny that they entered into the Master Loans and executed Notes 6 and 2 for the amounts at issue.[11] They do not claim that they made payments allegedly due under the Notes, nor do they question Lyon's status as DVI's assignor. Instead, Defendants argue that the extent of their liability, if any, is an issue of material fact because DVI failed to comply with its obligations under the Notes.

Cerullo's Affidavit states that DVI approached him and asked him to take over and save two floundering MRI facilities in Grapevine and Irving, Texas, and that he agreed only after DVI promised to provide him with loans to purchase new equipment.[12] Cerullo noticed that the Notes, as drafted by DVI, were for much higher amounts than he agreed to pay for the floundering facilities. However, DVI represented that the terms of the Notes included cash advances to Cerullo, in the amount equal to the difference between

---

6. *See* Exs. A–C to Compl.

7. *See* Ex. G to Compl.

8. *See* Ex. D to Compl. Note 6 refinanced promissory notes with contract numbers 2989–001, 2989–002, 2989–003, and 2989–005. *Id.* ¶ 22.

9. *See* Ex. H to Compl.

10. Ex. I to Compl. Note 2 refinanced a certain promissory note dated April 18, 2002, directing DVI to advance the funds to contract number 3015–001. *See id.* ¶ 21 and Rider C.

11. *See* Cerullo's Aff't ¶¶ 8–9.

12. Cerullo's Aff't ¶ 5.

the value of the facility and the face amount of the Note in question.[13]

Plaintiff responds that Defendants are claiming fraud in the inducement, and that any evidence of DVI's alleged oral misrepresentations is barred by the parol evidence rule under Pennsylvania law, because all of the agreements at issue are fully integrated written documents. Plaintiff is correct. Under Pennsylvania law, "the parol evidence rule bar[s] consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently *omitted from the contract*."[14] However, the rule permits admission of prior representations where a party alleges fraud in the execution, such as where "the parties agreed that those representations would be included in the written agreement but were omitted by fraud, accident or mistake."[15]

Fraud in the inducement involves "allegations of oral representations on which the other party relied in entering into the agreement but which are contrary to the express terms of the agreement."[16] "Fraud in the execution applies to situations where parties agree to include certain terms in an agreement, but such terms are not included. Thus, the defrauded party is mistaken as to the contents of the physical document that it is signing. Parol evidence is admissible in such a case only to show that certain provisions were supposed to be in the agreement but were omitted because of fraud, accident, or mistake."[17]

Defendants respond that the parties agreed upon certain terms, including promises of additional funding from DVI, and DVI represented the terms of the Notes as memorializing these promises. Defendants argue that this is a claim of fraud in the execution. The Third Circuit rejected this same argument in *Dayhoff*.[18] Because Defendants are not alleging that the agreed-upon terms were omitted from the Notes, but that DVI misrepresented the meaning of the terms actually contained in the notes, they allege fraud in the inducement and not in the execution, and the parol evidence rule bars any evidence of alleged DVI's misrepresentations.

Defendants also argue that parol evidence is admissible to interpret ambiguous provisions of a contract. Defendants specifically claim that the payment provisions of the Notes are ambiguous, and that their "refinancing" language does not pre-

---

13. *See* Cerullo's Aff't ¶¶ 5–6, 8–9, 12–13.

14. *Dayhoff, Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1300 (3d Cir.1996).

15. *1726 Cherry St. P'ship v. Bell Atlantic Prop.'s,* 439 Pa.Super. 141, 653 A.2d 663, 666 (1995).

16. *Dayhoff,* 86 F.3d at 1300.

17. *Id.; see also 1726 Cherry St.,* 653 A.2d at 666.

18. In *Dayhoff,* the plaintiff corporation claimed that its president, unrepresented by counsel during negotiations with the defendant corporation, signed an agreement containing a termination clause in reliance on fraudulent misrepresentations about the meaning of the termination clause. When the plaintiff's president questioned the meaning of the termination clause, the defendant's counsel gave him an explanation that differed from the plain language of the contract. The Third Circuit held that the parol evidence rule precluded the plaintiff from introducing evidence of the defendant's misrepresentations to alter the plain terms of the contract. In doing so, it also specifically rejected the plaintiff's claim that it alleged fraud in the execution: "[i]t is clear that Dayhoff alleges fraud in the inducement in this case, despite its protestations to the contrary." *Dayhoff,* 86 F.3d at 1300.

clude promises of additional funding for new equipment. This argument fails because this interpretation of the language of the Notes is contrary to the express terms of these contracts.[19] The Notes contain clear language stating that the proceeds of the loans were to be used to refinance existing debt.[20] Defendants admit negotiating the Notes at length.[21] If Defendants wanted DVI to provide additional financing for new equipment as a condition for entering into the Notes, they should have insisted on including such important terms in the contracts. Defendants cannot attempt to re-write the written terms of fully integrated documents several years after executing them.[22]

### 2. *Altered Collateral—Note 2*

■ Cerullo's Affidavit states that DVI subsequently altered the collateral allegedly securing Note 2, and that he did not sign Note 2 in the form attached to Plaintiff's motion.[23] Since Note 2 is a document refinancing existing debt, Defendants' assertion does not create an issue as to any

material fact that would prevent summary judgment on Plaintiff's breach of contract or guarantee claims. Any alleged mistake or subsequent substitution of rider describing collateral has no bearing on whether a contract existed between the parties and whether Defendants breached the contract by failing to make due payments.[24]

### C. The Medical Shop Loan—Note 4 Claims

As additional consideration for the Medical Shop Master Loan, Defendant TIDC, Inc. signed a guaranty of Medical Shop's obligations.[25] Plaintiffs allege that on March 26, 2003, DVI and Medical Shop executed a promissory note in the total amount of $1,552,525.92 ("Note 4").[26]

■ Plaintiff moves for summary judgment on Counts 5–6 of the Complaint, which assert breach of contract claims against Medical Shop and a breach of guarantee claim against TIDC, Inc. for their alleged failure to make monthly payments due under Note 4 as of August 1,

---

19. *See, e.g., Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 111 (3d Cir.1994) (a contract provision is ambiguous if it is susceptible of two reasonable alternative interpretations; the Court will interpret an unambiguous contract as a matter of law).

20. *See* Ex. D to Compl. ¶ 22 (Note 6 is "given in replacement for, but not in repayment of those certain Secured Promissory Note Nos. 2989–001, 2989–002, 2989–003 and 2989–005...."); *id.* at Rider C (signed by Cerullo on Defendants' behalf, the Rider acknowledges "receipt and sufficiency" of consideration and provides that the proceeds of Note 6 will be paid to DVI to refinance notes 2989–001, 2989–002, 2989–003 and 2989–005); Ex. I to Compl. at ¶ 21 and Rider C (Note 2 refinances a promissory note dated April 18, 2002, contract number 3015–001); *see also* Ex. C to Compl., at ex. A–D (setting out Defendants' payment obligations under notes 2989–001, 2989–002 and 2989–003).

21. *See* Cerullo's Aff't ¶ 3.

22. *See Bardwell v. Willis Co.,* 375 Pa. 503, 508–509, 100 A.2d 102 (1953). Defendants' argument that Plaintiff's claims are barred because DVI failed to comply with the terms of the notes by failing to advance additional funds for new equipment to Cerullo fails for the same reason—nothing in the language of any of the Notes at issue requires DVI to provide such funding.

23. Cerullo's Aff't ¶ 10.

24. Plaintiff is not moving for summary judgment on its replevin and assemblage claims against Defendants.

25. *See* Ex. L to Compl.

26. Ex. J to Compl. Note 4 refinanced promissory notes with contract numbers 2823–001 and 2823–002 and an equipment schedule number 1944–002. *Id.* ¶ 21.

2003. Plaintiff seeks principal in the amount of $1,552,525.92, plus interest etc.

Cerullo disputes Defendants' liability under Note 4, stating that he did not sign the Note in the form attached to Plaintiff's motion. Specifically, he argues that he did not agree to be indebted to Plaintiff for the amount documented in the version of Note 4 submitted by Plaintiff in support of its motion for partial summary judgment.[27] Cerullo does not appear to claim that he never signed Note 4, only that he did not sign it in the form attached to Plaintiff's motion, and that Note 4 submitted by Plaintiff does not contain any pages with his signature outlining Defendants' financial obligations under the Note.[28] Cerullo also claims that he never received the money alleged to be owed under Note 4.[29]

None of the signature pages in the Notes Cerullo signed for Defendants contain financial obligations. These obligations are set out on the first page of each Note as their face value.[30] However, Notes 2, 6, and 7 also contain "Rider C"— a funding authorization signed by Cerullo that lists the financial obligation equal to the face value of the Note in question.[31] Note 4, in the form attached to Plaintiff's motion, does not contain such a funding authorization. Plaintiff attaches the purported Rider C for Note 4; however, the Rider has contract number 3014–002, i.e. the contract number of Note 2. Plaintiff, relying on another affidavit by Ms. Hollander, states that this Rider was "appar-

ently mislabeled as 3014–002" but was "in the original file for Note 4." [32] These discrepancies, along with Cerullo's assertion that he did not sign Note 4 in the form attached by Plaintiff, for $1,552,525.92, create an issue of material fact precluding summary judgment on Plaintiff's claims under Note 4.

Defendants fail to address Plaintiff's claims that Cerullo and TIDC, Inc. breached the terms of their respective guarantees. Accordingly, since Defendants fail to point to specific disputed issues of material fact regarding Plaintiff's Note 2 and 6 claims, the Court grants summary judgment on counts 1–2 and 13–14 of Plaintiff's Complaint in the TIDC–Grapevine action. Given the existence of material issues of fact regarding Defendants' liability on Note 4, the Court denies summary judgment as to Defendants' liability on Counts 5 and 6.

### D. Grapevine Loan—Note 7 Claims

■ Pursuant to the Grapevine Master Loan, on June 10, 2003, the parties entered into a promissory note in the amount of $73,627.13 ("Note 7").[33] Plaintiff moves for summary judgment on Counts 9–10 of the Complaint, which assert a breach of contract claim against TIDC–Grapevine and the Medical Shop and a breach of guarantee claim against Cerullo, for Defendants' alleged failure to make monthly payments of $1,668.67 as of February 1,

---

**27.** Cerullo's Aff't ¶ 11.

**28.** *Id.* Cerullo also states that DVI, on numerous occasions, pressured him to sign additional copies of signature pages for documents he already signed. *Id.* ¶ 7.

**29.** This appears to be the same breach of contract argument the Court addressed earlier with respect to Notes 6 and 2. The Court believes it to be without merit because Note 4, just like Notes 6 and 2, is a refinancing docu-

ment which does not, on its face, create any obligations for DVI to advance funds to Defendants.

**30.** *See* Exs. D, E, I to Compl.

**31.** *See id.*

**32.** Hollander's Aff't in Further Support, n. 1, ex. D.

**33.** *See* Ex. E to Compl.

2004. Plaintiff seeks remaining principal in the amount of $71,657.10, plus interest etc.

Defendants do not dispute that DVI advanced the money in question, in accordance with its obligations under Note 7, to a third party equipment vendor, that Defendant Cerullo accepted the purchased equipment, and that Defendants defaulted on the payments due under Note 7. Defendants' only objection is that Plaintiff does not explain how it adjusted the amount demanded to account for payments made by Defendants prior to their default on Note 7.

Plaintiff points to Cerullo's deposition, arguing that he testified that Defendants defaulted on Note 7 in February 2004. However, Cerullo's exact reply, when asked whether Defendants defaulted by failing to make the February 2004 payment, was "could be." [34] Further, the payment schedule in Note 7 provides for three monthly payments in the amount of $528.94, from October to December 2003, and fifty-four monthly payments in the amount of $1,668.97 thereafter, for the total amount of $73,627.13. If Defendants defaulted in February 2004, they would owe $70,401.34 in remaining principal and not $71,657.10 claimed by Plaintiff. This discrepancy, along with Cerullo's (and Plaintiff's) uncertainty on the precise time of Defendants' default, creates an issue of material fact regarding the precise amount of Plaintiff's damages under Note 7.

For these reasons, the Court grants summary judgment as to Defendants' liability on Counts 9 and 10 but denies it as to the damages on these claims.

## II. *The TIDC–Irving Action (No. 04–2086)*

Plaintiff brings this action against TIDC–Irving, Inc. only. Plaintiff alleges that on February 28, 2003, DVI and TIDC–Irving entered into a Master Equipment Lease, contract number 3813, pursuant to which the parties could enter into equipment lease schedules.[35] Plaintiff moves for summary judgment on its breach of contract claims against TIDC–Irving for breach of three payment schedules: an equipment schedule dated February 28, 2003, for $1,500,000.35 ("Schedule 1"); an equipment schedule dated February 28, 2003, for $431,927.65 ("Schedule 2"); and an equipment schedule dated February 28, 2003, for $328,930.08 ("Schedule 3").[36]

### A. Schedule 3 Claim

Count 3 of the Complaint alleges that beginning on July 1, 2003, Defendants defaulted on the monthly payments due under Schedule 3, and seeks remaining discounted principal in the amount of $310,437.83, plus interest etc. Defendants admit their default and liability for $310,437.83 under Schedule 3. Accordingly, the Court grants summary judgment on this claim.

### B. Schedule 1 and 2 Claims

■ Counts 1–2 of the Complaint allege that beginning on July 1, 2003, Defendants defaulted on the monthly payments due under Schedules 1 and 2. Plaintiff seeks remaining principal in the amount of $1,827,985.43 on Schedule 1 as well as remaining principal in the amount of $526,031.54 on Schedule 2.

**34.** *See* Ex. A to Defs.' Opp., N.T. 01/31/05 at 177:17–25.

**35.** *See* Ex. A to Compl.

**36.** *See* Exs. B–D to Compl. Plaintiff also brings claims in replevin and for assemblage and turnover of the equipment at issue.

It is unclear whether the Schedules are true leases or disguised loans. The Schedules use lease transaction terminology and attach descriptions of allegedly leased equipment, and Plaintiff refers to the Schedules as leases. However, Rider C to Schedule 1 provides that its proceeds are to be applied to TIDC, Inc. existing line of credit.[37] Rider C to Schedule 2 provides that its proceeds, in the total amount of $431,927.65, are to be applied to DVI contracts 2852–001 and 989–501.[38]

Defendant Cerullo, in his affidavit, refers to both Schedules as "promissory notes" and points out that the equipment securing TIDC–Irving's obligations under both Schedules is the same antiquated piece of equipment worth only $10,000. He states that he did not sign these Schedules in the form attached to Plaintiff's motion.[39]

Because at this point the parties' affidavits create an issue of fact as to whether the Schedules are leases or disguised loans, and the parties disagree regarding the exact content of the contracts at issue, including the parties' respective obligations, the Court denies summary judgment on Counts 1 and 2 of the Complaint.

An appropriate Order follows.

### *ORDER*

**AND NOW**, this 8th day of September, 2005, upon review of Plaintiff's Motions for Partial Summary Judgment [Doc. # 21]; Defendants' Opposition thereto [Doc. # 23]; Plaintiff's Responses [Doc. # 24], and the record, it is hereby **ORDERED** that Plaintiff's Motions are **GRANTED IN PART** and **DENIED IN PART**. It is further **ORDERED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment on Counts 1–2 and 13–14 of the Complaint in the above-captioned action No. 04–2987 is **GRANTED** and **JUDGMENT IS ENTERED** in favor of Plaintiff against Defendants Medical Shop, TIDC–Grapevine, Inc., and Emil Cerullo;

2. Plaintiff's Motion for Partial Summary Judgment on Counts 5–6 of the Complaint in the above-captioned action No. 04–2987 is **DENIED**;

3. Plaintiff's Motion for Partial Summary Judgment on Counts 9–10 of the Complaint in the above-captioned action No. 04–2987 is **GRANTED** as to Defendants' liability, and **DENIED** as to damages;

4. Plaintiff's Motion for Partial Summary Judgment on Counts 1–2 of the Complaint in the above-captioned action No. 04–2986 is **DENIED**;

5. Plaintiff's Motion for Partial Summary Judgment on Count 3 of the Complaint in the above-captioned action No. 04–2986 is **GRANTED** and and **JUDGMENT IS ENTERED** in favor of Plaintiff against Defendant TIDC–Irving, Inc.

It is so **ORDERED**.

---

37. *See* Ex. B to Compl.

38. *See* Ex. C to Compl.

39. Cerullo's Aff't ¶¶ 12–13. The same piece of equipment appears to serve as collateral for TIDC–Irving's obligations under Schedule 3. *See* Ex. D to Compl.