2025 PA Super 170

| | | |
|---|---|---|
| ROBERT RUDY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROBERT LESNIAK, JACOB LESNIAK, | : | No. 1124 WDA 2024 |
| AND BENJAMIN STAIRS | : | |

Appeal from the Order Dated January 9, 2024
In the Court of Common Pleas of Washington County Civil Division at
No(s): 2023-4240

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.: **FILED: AUGUST 7, 2025**

Robert Rudy ("Appellant") appeals from the January 9, 2024 order, which overruled, in part, his preliminary objections to the complaint filed by Robert Lesniak, Jacob Lesniak, and Benjamin Stairs (collectively "Appellees"), in this civil litigation. After careful review, we affirm.

## Background

In its January 9, 2024 order, the trial court provided the following factual background and procedural history of this case:

This matter stems from the parties' transaction regarding a piece of real estate and equipment sitting on that property. In January 2022, [Appellees] learned that [Appellant] was selling his building and its contents located in Fredericktown, Pennsylvania. At a meeting between the parties in January 2022, [Appellant] informed [Appellees] that the price for the building and equipment was $625,000.00. Then, in February 2022, [Appellees] visited the property to inspect the condition of the building and the equipment. [Appellees] found the condition of the building to be

poor to fair and that of the equipment wanting. At this February meeting, [Appellant] allegedly told [Appellees] that in further consideration of the [purchase price], he would include "re-tipping" work[1] in the [deal]. Over the next few days, [Appellant] reiterated his representation regarding re-tipping [work] and told [Appellees] of the considerable value it would provide them. [Appellees], in view of the additional consideration [Appellant] offered, accepted the $625,000.00 price, specifying that the deal was acceptable "if [Appellant] included the re-tipping work for the mines."

Since the parties signed the Agreement of Sale (["]Agreement["]), [Appellant] has failed to provide any re-tipping work. Additionally, [Appellees] believe that the condition of the property and equipment was not as represented, with large holes in flooring hidden under steel plating and severe leakage from the building's aged roof, and the equipment in varying degrees of deterioration.

On August 4, 2023, [Appellees] filed [a] Complaint, which includes four counts. Count I alleges fraud in the execution; Count II fraud in the inducement; Count III promissory estoppel; and Count IV breach of warranty with damages due pursuant to [13 Pa.C.S.] § 2717. [Appellant] filed preliminary objections to each of the four counts under Pa.R.Civ.P. 1028(a)(4)[. Thereafter,] … the parties filed briefs in support of and [in] opposition to the objections. The [c]ourt heard the parties' arguments on January 4, 2024.

Trial Court Order ("TCO"), 1/9/24, at 1-2.

On January 9, 2024, the trial court entered an order, in which it overruled Appellant's preliminary objections relating to Counts I and II, sustained the objections pertaining to Counts III and IV, and dismissed Counts III and IV. Appellant filed a timely petition for permission to appeal,[2] which

---

[1] *See* N.T., 1/4/24, at 4 (Appellant's counsel explaining that "re-tipping work" means "fabricating work in connection with mines"). The "re-tipping work" is also sometimes referred to herein as "flight work" or "mine work."

[2] On February 7, 2024, pursuant to Pa.R.A.P. 1311(b), Appellant presented a motion to amend the language of the January 9, 2024 order to include the
*(Footnote Continued Next Page)*

was granted by this Court on September 18, 2024. The trial court did not direct Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, nor did it file a Rule 1925(a) opinion.[3]

## Issues

Appellant now presents the following questions for our review:

1. Whether the trial court committed reversible error in permitting a fraud in the execution claim to survive despite Appellee[s'] failure and inability to allege any material facts that any term was fraudulently, or by accident or mistake[,] omitted from the Agreement of Sale?

2. Whether the trial court committed reversible error in permitting a fraud in the inducement claim to survive when the claim was based solely upon allegations of prior and contemporaneous oral representations that were not incorporated into the [p]arties' fully integrated Agreement of Sale?

Appellant's Brief at 6.[4]

## Standard of Review

---

language specified in 42 Pa.C.S. § 702(b) that would permit him to appeal. *See* 42 Pa.C.S. § 702(b) ("When a court…, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order."). The trial court granted the motion that same day. *See* Pa.R.A.P. 1311(a)(1) ("An appeal may be taken by permission from an interlocutory order … certified under 42 Pa.C.S. § 702(b)….").

[3] The trial court set forth in detail the reasons for its decision in its January 9, 2024 order. *See generally* TCO at 1-8.

[4] We have reordered Appellant's issues for ease of disposition.

- 3 -

Our standard of review is well-established:

> As a trial court's decision to sustain or overrule a demurrer involves a matter of law, our standard for reviewing that decision is plenary. Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. Moreover, when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.
>
> Furthermore, our standard of review of an order of the trial court overruling or sustaining preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Kopinetz v. Waste Management and Processors, Inc.*, 315 A.3d 138, 142 (Pa. Super. 2024) (citation omitted).

## Fraud

Each of Appellant's claims challenges the trial court's finding that Appellees established a *prima facie* claim of a specified type of fraud. To state a cause of action for fraud, a party must plead each of the following elements:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on

the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

***Gibbs v. Ernst***, 647 A.2d 882, 889 (Pa. 1994).

There are two kinds of fraud claims related to the formation of a contract: fraud in the execution and fraud in the inducement. ***See SodexoMAGIC, LLC v. Drexel Univ.***, 24 F.4th 183, 206 (3d. Cir. 2022) (applying Pennsylvania law)[5]; 17A C.J.S. Contracts § 218. Our Supreme Court has described fraud in the execution as occurring where "a term was fraudulently omitted from the contract," and fraud in the inducement of a contract as taking place where "an opposing party made false representations that induced the complaining party to agree to the contract." ***Toy v. Metro. Life Ins. Co.***, 928 A.2d 186, 205 (Pa. 2007) (citations omitted). ***See also SodexoMAGIC, LLC***, 24 F.4th at 206 (explaining that the six elements of fraud apply to claims of fraud in the execution and fraud in the inducement).

"In Pennsylvania, fraud of any kind must be pleaded in a complaint with particularity." ***Kern v. Kern***, 892 A.2d 1, 8 (Pa. Super. 2005) (citing Pa.R.Civ.P. 1019(b)). While it is impossible to establish precisely what degree of particularity is required to sufficiently allege fraud, it is well-settled that the following two conditions must always be met: "The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense[,] and they must be sufficient to convince the court that

---

[5] "Although this Court is not bound by federal court opinions interpreting Pennsylvania law, we may consider federal cases as persuasive authority." ***Chevalier v. Gen. Nutrition Ctrs., Inc.***, 177 A.3d 280, 296 (Pa. Super. 2017) (citation omitted).

the averments are not merely subterfuge." ***Youndt v. First Nat'l Bank of Port Allegany***, 868 A.2d 539, 544-45 (Pa. Super. 2005).

## Parol Evidence Rule

In both of his claims, Appellant questions the trial court's application of the parol evidence rule. In Pennsylvania, the parol evidence rule is explained as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract … and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.
>
> ***Yocca v. Pittsburgh Steelers Sports Inc.***, … 854 A.2d 425, 436 ([Pa.] 2004) (quoting ***Gianni v. Russel & Co.***, … 126 A. 791, 792 ([Pa.] 1924)). The parol evidence rule seeks to preserve the integrity of a written agreement by barring the contracting parties from trying to alter the meaning of their agreement through use of contemporaneous oral declarations. ***Lenzi v. Hahnemann University***, … 664 A.2d 1375, 1379 ([Pa. Super.] 1995). "For the parol evidence rule to apply, there must be a writing that represents the entire contract between the parties." ***Yocca***, ***supra***. An integration clause stating the parties intend the writing to represent their entire agreement is a "clear sign" the writing "expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." ***Toy***…, … 928 A.2d [at] 204….

***DeArmitt v. New York Life Ins. Co.***, 73 A.3d 578, 589-90 (Pa. Super. 2013) (internal brackets omitted).

Additionally, it is well-established:

Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract. *See Bardwell v. Willis Co.*, … 100 A.2d 102, 104 ([Pa.] 1953); *McGuire*[ *v. Schneider*], 534 A.2d [115,] 117-18 ([Pa. Super.] 1987). One exception to this general rule is that parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake.[26] *See HCB Contractors*[ *v. Liberty Place Hotel Associates*], 652 A.2d [1278,] 1279[ (Pa. 1995)]; *Bardwell*, 100 A.2d at 104. In addition, where a term in the parties' contract is ambiguous, "parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *Estate of Herr*, … 161 A.2d 32, 34 ([Pa.] 1960); *see also Waldman v. Shoemaker*, … 80 A.2d 776, 778 ([Pa.] 1951).

> [26] Notably, while parol evidence may be introduced based on a party's claim that there was a fraud in the execution of the contract, *i.e.*, that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, *i.e.*, that an opposing party made false representations that induced the complaining party to agree to the contract. *See HCB Contractors*, 652 A.2d at 1279; *Bardwell*, 100 A.2d at 104.[6]

---

[6] Our Supreme Court explained the reason for this distinction as follows:

First, the policy that the parol evidence rule aims to serve, which is to uphold the integrity of the written contract because the writing is considered the embodiment [of] the parties' true agreement, *see Rose v. Food Fair Stores, Inc.*, … 262 A.2d 851, 853 ([Pa.] 1970), is not furthered by a refusal to recognize the fraud in the execution exception, as it is in refusing to recognize an exception for fraud in the inducement. This is so because in the fraud in the execution context, the allegation is that the written agreement is **not** the expression of the parties' true and complete contractual intent inasmuch as terms that were

*(Footnote Continued Next Page)*

***Yocca***, 854 A.2d at 436-37.

## Discussion

The crux of Appellant's argument in both of his claims is that the trial court erred in considering parol evidence to reach its determination that Appellees established *prima facie* claims of fraud in the execution and fraud in the inducement. We address each of these claims separately, mindful of the foregoing legal principles.

### I.    Fraud in the Execution

The trial court expressly stated that Appellees' fraud in the execution claim was supported by oral representations that Appellant allegedly made to Appellees regarding additional consideration which was not reflected in the Agreement. TCO at 4; ***see also id.*** (summarizing averments in the Complaint that detail the alleged pre-Agreement representations made by Appellant to Appellees). Taking into account those alleged oral representations, the trial court concluded that Appellees established a *prima facie* claim for fraud in the

---

agreed to by the parties were omitted from that writing through fraud. Second, if a party were allowed to introduce representations made prior to contract formation that contradicted or varied the terms of his written contract by merely alleging that the representations were fraudulent, the fraud exception could swallow the rule. ***See Bardwell***, 100 A.2d at 104. And third, a party to a contract has the ability to protect himself from fraudulent inducements by insisting that those "inducements" be made part of the written agreement, and refusing to contract if they are not. ***Id.***

***Toy***, 928 A.2d at 206 n.24 (emphasis in original).

execution.  **See id.** at 5; **see also id.** (finding that Appellees pleaded the alleged fraud with sufficient particularity, such as providing the time and place of the alleged misrepresentations).  Thus, it overruled Appellant's preliminary objections to Count I.

On appeal, Appellant contends that the trial court erred in overruling the demurrer to Appellees' fraud in the execution claim, reasoning that they failed to plead sufficient facts to invoke the fraud exception to the parol evidence rule.  Appellant's Brief at 21.  He notes that "[f]raudulent misrepresentations may be proved to modify or avoid a written contract if it is averred and proved that **they were omitted** from the (complete) written contract by fraud, accident or mistake."  **Id.** (quoting **Bardwell**, 100 A.2d at 104) (emphasis added by Appellant).  However, he contends that Appellees have merely averred that fraudulent misrepresentations were **made and justifiably relied on**.  **Id.** at 23.  Appellant argues that "[c]ritically, [Appellees have] fail[ed] to allege any factual basis suggesting that representations related to 're-tipping work' were fraudulently **omitted** from the document itself."  **Id.** (some emphasis omitted).  **See also id.** at 22-24 (suggesting that Appellees failed to plead fraud with sufficient particularity to comply with the requirements of Pa.R.Civ.P. 1019(b)).  This claim is belied by the record.

First, we examine the Agreement to determine whether it constitutes the parties' entire contract.  **See Yocca**, 854 A.2d at 436 ("[F]or the parol evidence rule to apply, there must be a writing that represents the entire contract between the parties.") (citation and internal quotation marks

omitted); *see also Walker v. Saricks*, 63 A.2d 9, 11 (Pa. 1949) ("Whether the writing is the entire contract between the parties so that the parol evidence rule is applicable is a question of law for the court."); *McGuire*, 534 A.2d at 118 ("Whether a writing is an integrated agreement, and if so, whether the agreement is completely or partially integrated, are questions to be decided by the court prior to application of the parol evidence rule.").

> To determine whether or not a writing is the parties' entire contract, the writing must be looked at and if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement, it is conclusively presumed that the writing represents the whole engagement of the parties. An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreement made prior to its execution.

*Yocca*, 854 A.2d at 436 (cleaned up); *see also McGuire*, 534 A.2d at 117 ("The effect of an integration clause is to make the parol evidence rule particularly applicable.").

Instantly, the Agreement signed by both parties consists of the essential terms to form a valid contract for the sale of real estate, *i.e.*, naming of the specific parties, property, and consideration or purchase price. *See GMH Assocs., Inc. v. Prudential Realty Grp.*, 752 A.2d 889, 900 (Pa. Super. 2000). Moreover, based on our cursory review of the document, we do not discern any ambiguity in the terms, nor do we detect any language indicating that anything beyond the four corners of the writing is necessary in order to

ascertain the intent of the parties.[7]  **See McGuire**, 534 A.2d at 118.  Most

notably, we observe that the document contains the following integration

clause:

> **This Agreement constitutes the entire contract between the parties hereto** and there are no other understandings, oral or written, relating to the subject matter hereof.  This Agreement may not be changed, modified or amended except in writing signed by all the parties.

Complaint, Exhibit 2 ("Agreement of Sale") at ¶ 16 (emphasis added).  **See**

**Yocca**, 854 A.2d at 436 (declaring that an integration clause is a "clear sign"

that the writing is meant to be the parties' entire contract).  Thus, we conclude

that the Agreement is a fully integrated contract.

Once a writing is determined to be the parties' entire contract, the parol

evidence rule generally applies.  **See id.** at 436-37.  However, it is well-

established that "the parol evidence rule does **not** apply to allegations of fraud

in the execution of a contract…."  **Boehm v. Riversource Life Ins. Co.**, 117

A.3d 308, 325-26 (Pa. Super. 2015) (emphasis added).  **See also Yocca,**

**supra**; **DeArmitt**, **supra**; **Blumenstock v. Gibson**, 811 A.2d 1029, 1036

(Pa. Super. 2002) (stating that "parol evidence of representations is

inadmissible as to a matter covered by a written agreement with an

integration clause **unless** the parties agreed that those representations would

be added to the written agreement but they were omitted because of fraud,

---

[7] Neither party has raised any issues regarding ambiguous terms in the Agreement, nor have they directed us to any contractual language pointing to anything outside the four corners of the document.

accident or mistake[,]" *e.g.*, fraud in the execution) (emphasis added; citations omitted).  Thus, we turn next to the Complaint to determine whether Appellees pleaded sufficient facts to invoke the fraud in the execution exception.

Appellees specifically pleaded in their Complaint that, "in early February 2022[,]" they met with Appellant, "who advised [them] that in further consideration of the purchase price of $625,000.00[,] he would include work for [Appellees] from his connections with coal mine facilities[,] re-tipping flights for the long walls."  Complaint at ¶¶ 7-8.  Appellees further averred that, "a few days later," they told Appellant they would pay the $625,000.00 sale price, "if [he] included the re-tipping work for the mines[.]"  *Id.* at ¶ 9.  They alleged that "[Appellant] telephoned Robert Lesniak three days later and accepted [Appellees'] proposal, further assuring Robert Lesniak that the sale/deal included the mine work."  *Id.* at ¶ 10.  Moreover, Appellees asserted that during a meeting "on a Monday in late February 2022, [Appellant] … told [them] about the money to be made by doing the flight work … [and that] he would have his attorney draw up all the paperwork for the sale/deal."  *Id.* at ¶ 17.  Appellees averred that, "[o]n March 16, 2022, the parties met at [Appellant's] attorney's office to close the sale/deal.  However, prior to closing, [Appellees] were not provided with copies of the closing documents."  *Id.* at ¶ 23.  Remarkably, they asserted that "[n]one of the sale/deal or closing documents includes [*sic*] the parties' agreed-to terms for [Appellant] to provide [Appellees] with flight work."  *Id.* at ¶ 26.

In Count I of their Complaint, Appellees further pleaded:

43. Paragraphs 1 through 42 of the foregoing Complaint are incorporated by reference.

44. In February 2022, the parties agreed that the sale price of $625,000.00 included the value of two or more re-tipping projects per year to be provided by [Appellant] to [Appellees].

45. [Appellant] advised [Appellees] that he would have his attorney draw up all the paperwork for the deal/sale.

46. [Appellees] justifiably relied on [Appellant's] specific representations that re-tipping work was available and would be provided and constituted additional consideration for the sale price of $625,000.00, **to be included in the parties' written agreements**.

47. Prior to closing, [Appellees] were not provided with copies of the written agreements or closing documents for review.

48. Appellees signed the written agreements and closing documents believing that the agreements and documents contained the parties' agreed-to terms for the re-tipping work to be provided by [Appellant].

49. **Either due to fraud, accident or mistake, the parties agreed-to terms for re-tipping work were omitted from the parties' written agreements and closing documents.**

50. [Appellant] failed to obtain re-tipping work for [Appellees].

51. [Appellant] knew that he could not provide, nor was [he] able to provide [Appellees] with re-tipping work prior to sale.

52. [Appellees] have suffered damages measured by the lost value of the re-tipping projects included in the sale price of $625,000.00.

Complaint at ¶¶ 43-52 (emphasis added).

In sum, Appellees specifically averred in their Complaint that Appellant represented to them he would provide Appellees with re-tipping work as additional consideration for the agreed-upon sale price; that he knew he would

- 13 -

be unable to provide such re-tipping work; that Appellant's representations regarding the re-tipping work were to be included in the Agreement; that Appellees justifiably relied on those representations in executing the contract[8]; and that "[e]ither due to fraud, accident or mistake," those representations were omitted from the Agreement. *See id.* Hence, Appellees are clearly alleging fraud in the execution as defined by Pennsylvania case law. *See, e.g.*, *Blumenstock*, 811 A.2d at 1036 (defining "fraud in the execution" as a situation where parties agreed certain representations would be added to a written agreement, but those representations were omitted because of fraud, accident, or mistake).

---

[8] We note that a party's failure to read a contract prior to signing it does not preclude that party from establishing justifiable reliance on alleged misrepresentations. *See Toy*, 928 A.2d at 208. As our Supreme Court explained:

> Some time ago, we determined that a party who engages in intentional fraud should be made to answer to the party he defrauded, even if the latter was less than diligent in protecting himself in the conduct of his affairs. *See Emery v. Third Nat'l Bank of Pittsburgh*, 171 A. 881, 882 ([Pa.] 1934) … ("The law is not designed to protect the vigilant alone, although it rather favors them, but is intended as protection to even the foolishly credulous, as against the machinations of the designedly wicked.") [(citation omitted)]. … [W]e have relied on the principle that the recipient of an allegedly fraudulent misrepresentation is under no duty to investigate its falsity in order to justifiably rely, but that he is not justified in relying upon the truth of an allegedly fraudulent misrepresentation if he knows it to be false or if its falsity is obvious.

*Id.* at 207 (some citations and internal quotation marks omitted).

- 14 -

When fraud in the execution is alleged, as in the case *sub judice*, "representations made prior to contract formation are not considered superseded and disclaimed by a fully integrated written agreement…." **Toy**, 928 A.2d at 206-07.

> Instead, the prior representations "are viewed as wrongfully absent from the writing" intended to represent the parties' agreement. [**Toy**, 928 A.2d] at 207. Thus, … all the facts and circumstances surrounding the parties' transaction are admissible to determine whether the falsity of the alleged misrepresentations was obvious to the complaining party or whether the complaining party justifiably relied on the misrepresentations. **Id.** … at 208.

**DeArmitt**, 73 A.3d at 590; **see also Yocca**, 854 A.2d at 436 n.26 (declaring that parol evidence may be introduced based on a fraud in the execution claim). Accordingly, the trial court properly considered Appellant's alleged representations regarding the re-tipping work when deciding the preliminary objections to this claim. **See Toy**, **supra**; **Yocca**, **supra**; **DeArmitt**, **supra**; TCO at 4-5.

Accepting all the material facts set forth in the Complaint as true, we agree with the trial court that Appellees established a *prima facie* claim of fraud in the execution. **See Yocca**, **supra**; **Blumenstock**, **supra**; TCO at 5. Additionally, we discern no error or abuse of discretion in the trial court's determination that Appellees pleaded fraud in the execution with sufficient particularity to allow Appellant to prepare a defense and to convince the court

that such averments are not merely subterfuge. *See Youndt*, *supra*; *Kern*, *supra*; TCO at 5.[9]

## II. Fraud in the Inducement

In Count II of their Complaint, Appellees claimed that they were "fraudulently induced to purchase the subject building and contents through the fraud and/or misrepresentations made by [Appellant] prior to sale." Complaint at ¶ 54. In addition to the alleged misrepresentations regarding re-tipping work, they pleaded that around early to mid-February 2022, Appellant advised them that "the roof of the property suffered slight leakage[;] that the floor was perfect despite the presence of steel plating throughout[; and] … that building, business, and/or occupancy permits were in place for [Appellees] to begin operations on the site." *Id.* at ¶¶ 13-14. However, Appellees averred that, in late March or early April 2022, they were informed by the East Bethlehem Township Office that building and occupancy

---

[9] To the extent that Appellant claims the trial court failed to discuss the fraudulent **omission** of the representations from the Agreement and therefore its analysis is incomplete, *see* Appellant's Brief at 24-25, we acknowledge that the trial court focused on Appellant's failure to provide re-tipping work to Appellees, rather than on the omission of Appellant's representations regarding the re-tipping work from the Agreement. *See* TCO at 5 (opining that Appellant told Appellees his representations regarding re-tipping work would be included in the Agreement, yet "[t]o date, [Appellant] has provided none of the re-tipping work he promised"). Nevertheless, no relief is due on this claim, as the record clearly supports the trial court's finding that Appellees established a *prima facie* claim of fraud in the execution. *See Generation Mort. Co. v. Nguyen*, 138 A.3d 646, 651 n.4 (Pa. Super. 2016) ("[A]s an appellate court, we may uphold a decision of the trial court if there is any proper basis for the result reached; thus, we are not constrained to affirm on the grounds relied upon by the trial court.") (citation omitted).

permits had not been obtained, nor had the building been inspected, and that Appellant had known about the lack of permitting for years prior to entering the Agreement of Sale with Appellees. *Id.* at ¶¶ 30-32. Moreover, Appellees declared that in late April 2022, they removed the steel plates from the floor, discovering "at least thirty holes of approximately 2 feet or larger in size[,]" and they discovered that the roof "was so defective that rain fell within the shop area." *Id.* at ¶¶ 33, 41.

In support of their fraudulent inducement claim, Appellees averred that Appellant "specifically misrepresented" the following:

> (i)     He was able to provide work for [Appellees] from his connections with coal mine facilities[,] re-tipping flights for the long walls, and that the sale price included the value of that work;
>
> (ii)    The roof of the property suffered slight leakage, when in fact, the roof was so defective that rain fell within the shop area, which defect was not readily apparent on inspection;
>
> (iii)   The floor to the building was perfect despite the presence of steel plating throughout, when in fact, holes were later found everywhere within the floor beneath the steel plating, which defect was not readily apparent on inspection;
>
> (iv)    … Building, business, and/or occupancy permits were in place to begin operations.

*Id.* at ¶ 55 (cleaned up). Additionally, they contended that Appellant's misrepresentations were material to the sale transaction; that the misrepresentations were made falsely, with knowledge of their falsity or recklessness as to whether they were true or false; that Appellant intended to mislead Appellees into relying on those misrepresentations; and that Appellees justifiably relied on the aforesaid misrepresentations in entering into

the Agreement of Sale.  ***Id.*** at ¶¶ 56-59.  Consequently, Appellees claimed they suffered damages measured by the lost value of the re-tipping work, the costs to obtain the proper permits, and the costs to repair and remediate the building roof, floor, and contents.  ***Id.*** at ¶ 60.

The trial court overruled Appellant's preliminary objections in the nature of a demurrer with respect to Count II.  ***See*** TCO at 1.  It opined:

> As the parol evidence rule relates to [Appellees'] fraud in the inducement claim, the Agreement does not contain language expressly denying that re-tipping work would be included. Although the Agreement has an integration clause, the Agreement needed to "specifically include language in the written agreement denying the existence of" the re-tipping representations. ***Youndt***, ***supra***.  The Agreement is silent on the re-tipping work, and therefore the [c]ourt may consider pre-Agreement representations regarding it when considering Count II.

***Id.*** at 5.

Appellant claims that the trial court erred in overruling the demurrer to Appellees' fraud in the inducement claim, as "the claim was based solely upon allegations of prior and contemporaneous oral representations that were not incorporated into the parties' fully integrated Agreement of Sale."  Appellant's Brief at 6 (cleaned up); ***see also id.*** at 13.  He maintains that the parties "executed a commercial transaction as sophisticated businessmen in equal bargaining position, and reduced that transaction to an integrated[,] written contract."  ***Id.*** at 17-18.  He directs our attention to the following terms of the Agreement:

> [12.] It is hereby understood between the parties hereto that the property has been or will be inspected by Buyers or their agent and that the same is being purchased solely in reliance of such

- 18 -

inspection, and that there are no representations or warranties except as herein set forth.[10]

…

[15. ADDITIONAL PROVISIONS]

[a.] Buyers may obtain inspections as they may desire at their own cost and expenses, however, the premises and Equipment is being conveyed "as is" and "where is" with no warranty of any kind whatsoever.

[b] Buyers release, quit claims and forever discharges Seller from any and all claims, losses or damages, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from … any defects or conditions on the Property.

…

[16.] This Agreement constitutes the entire contract between the parties hereto and there are no other understandings, oral or written, relating to the subject matter hereof.  This Agreement may not be changed, modified or amended except in writing signed by all the parties.[11]

*Id.* at 8 (quoting Agreement of Sale at ¶¶ 12, 15(a), 15(b), 16) (cleaned up).

Appellant essentially argues that the parol evidence rule is applicable here and that the Agreement explicitly denies the existence of any representations not set forth in the writing, such as the oral representations that Appellees claim induced them into entering the Agreement.  Therefore, he maintains that Appellees are unable to establish a right to relief on this claim.  *See id.* at 17-18.

---

[10] Paragraph 12 of the Agreement is sometimes referred to herein as the "inspection clause."

[11] Paragraph 16 of the Agreement is sometimes referred to herein as the "integration clause."

Appellant particularly takes issue with the trial court's decision to permit evidence of prior oral representations regarding re-tipping work on the grounds that the Agreement did not include language expressly "denying the existence of" such prior representations. **See id.** at 18-20; TCO at 5. He suggests that, if allowed to stand, this decision would "open the door to a flood of litigations to renegotiate written agreements to add any conceivable term within the realm of imagination that is not 'explicitly denied' in the writing." Appellant's Brief at 20. He argues:

> Parties to a contract cannot possibly be expected to "specifically include language in the written agreement denying the existence" of any and all potential oral representations within the realm of imagination. For this reason, contracting parties include integration clauses, like the one set forth in the Agreement here. It would be impossible to formulate a written agreement that exhaustively listed all matters upon which the parties did not agree.

**Id. See also id.** at 19 (noting that the trial court's analysis did not address at all whatsoever the application of the parol evidence rule as it pertains to the purported misrepresentations regarding the status of permits or as to the physical condition of the subject premises, *i.e.*, the roof, the floor, and the electrical system).

While Appellees agree with the overruling of the demurrer to their fraud in the inducement claim, they — like Appellant — disagree with the trial court's rationale. **See** Appellees' Brief at 23 (noting that Appellees' counsel "cannot reconcile the lower court's 'express contradiction' discussion" and that "the lower court erred in this respect"). Appellees acknowledge that the parol

evidence rule generally bars extrinsic evidence to prove fraudulent inducement where the contract is fully integrated, and they concede that the Agreement contains an integration clause. *Id.* at 19, 24. They argue, however, that this matter falls within an exception carved out for real estate transactions that meet certain criteria. *Id.* 19-21. Specifically, they assert:

> Notwithstanding an inspection or integration clause, a buyer may recover for latent defects where the defects were not reasonably discoverable through an inspection of the property and where the seller had actual knowledge of the latent defects and had either made affirmative representations as to the absence of the defect or had made efforts to hide the defect physically by placement of objects to conceal it. Evidence of fraud in the inducement of a contract to buy real estate is not barred by the parol evidence rule under such circumstances. *Ward v. Serfas*, … 564 A.2d 251 ([Pa. Super.] 1989)[;] *Mancini v. Morrow*, … 458 A.2d 580 ([Pa. Super.] 1983)[.] In addition, where expert tests rather than visual inspection are necessary to determine the accuracy of a representation, a contractual integration clause is inapplicable, and the parol evidence rule is therefore inoperative. *Friedman v. Kasser*, … 481 A.2d 886 ([Pa. Super.] 1984)[.]

*Id.* at 20-21 (footnotes omitted).

Having already concluded that the Agreement in the case *sub judice* is a fully integrated contract to which the parol evidence rule generally applies, we look to Pennsylvania case law to determine how our courts have applied the parol evidence rule in cases alleging fraud in the inducement.

In the seminal case of *Bardwell*, our Supreme Court stated:

> Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, the law is now clearly and well settled that in the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or

- 21 -

superseded by the subsequent written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in evidence.

There is not the slightest doubt that if [the] plaintiffs had merely averred the falsity of the alleged oral representations, parol evidence thereof would have been inadmissible. Does the fact that [the] plaintiffs further averred that these oral representations were **fraudulently made** without averring that they were **fraudulently** or by accident or mistake **omitted** from the subsequent complete written contract suffice to make the testimony admissible? The answer is 'no'; if it were otherwise the parol evidence rule would become a mockery, because all a party to the written contract would have to do to avoid, modify or nullify it would be to aver (and prove) that the false representations were **fraudulently** made.

*Bardwell*, 100 A.2d at 104 (footnote and citations omitted; emphasis in original). *Bardwell* has been interpreted to mean that parol evidence of representations is inadmissible as to a matter covered by a written agreement with an integration clause **unless** a party is alleging fraud in the execution. *Blumenstock*, 811 A.2d at 1036 (citing *1726 Cherry St. P'ship by 1726 Cherry St. Corp. v. Bell Atlantic Props., Inc.*, 653 A.2d 663, 666 (Pa. Super. 1995)).

Following the precedent set in *Bardwell*, this Court opined:

In *Bardwell*…, our Supreme Court held that **only if** a party to a contract averred that a promise had been **omitted from** the final, written contract because of fraud, accident, or mistake could parol evidence properly be admitted. After several subsequent decisions which suggested a different approach, *e.g.*, *Berger v. Pittsburgh Auto Equipment Co.*, … 127 A.2d 334, 335 ([Pa.] 1956); *Nadolny v. Scoratow*, … 195 A.2d 87, 89 ([Pa.] 1963), [our] Supreme Court reasserted the *Bardwell* holding in *Nicolella v. Palmer*, … 248 A.2d 20, 22-23 ([Pa.] 1968). This [C]ourt has subsequently held that where the assertions put forth by one party are specifically contradicted by the written agreement, *Bardwell* applies and parol evidence is admissible

- 22 -

**only** to prove fraud in the execution, **not** the inducement, of the contract. **Abel v. Miller**, … 437 A.2d 963, 965 ([Pa. Super.] 1982); **LeDonne v. Kessler**, … 389 A.2d 1123, 1130 & n.10 ([Pa. Super.] 1978).

**McGuire**, 534 A.2d at 119 (some emphasis added). Our Supreme Court reaffirmed **Bardwell** in **Yocca**, noting that "while parol evidence may be introduced based on a party's claim that there was a fraud in the execution of the contract, … parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract…." **Yocca**, 854 A.2d at 437 n.26 (citing **Bardwell**, 100 A.2d at 104).

Regarding the refusal to apply the fraud exception to fraudulent inducement cases, our courts have reasoned:

> A party cannot justifiably rely upon prior representations, yet sign a contract denying the existence of those representations. **LeDonne**…, 389 A.2d at 1130 n.10. … "If plaintiffs relied on any understanding, promises, representations or agreements made prior to the execution of the written contract, they should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely…." **Bardwell**…, … 100 A.2d at 105.

**McGuire**, 534 A.2d at 119-20; **cf. Youndt**, 868 A.2d at 546 (explaining that "in a case of fraud in the inducement, parol evidence is inadmissible where the contract contains terms that deny the existence of representations regarding the subject matter of the alleged fraud[,]" but "when the contract contains no such term denying the existence of such representations, parol evidence is admissible to show fraud in the inducement").

Instantly, the parties' written contract contains all the essential terms of an agreement to purchase real estate, including a description of the

property being sold and the consideration. *See* Agreement at ¶¶ 1-3. Appellees' fraud in the inducement claim is based on Appellant's alleged, oral misrepresentations regarding the physical condition of the property being purchased, as well as the status of applicable permits pertaining to that property, and re-tipping work that was to be provided to Appellees as additional consideration for the sale. *See* Complaint at ¶ 55. Because the subject matter of those alleged misrepresentations is covered by the written contract and is specifically contradicted by terms in the Agreement, *i.e.*, the inspection clause and the integration clause,[12] any parol evidence of such misrepresentations is generally barred for the purpose of proving fraudulent inducement,[13] and Appellees' claim would fail. ***See Youndt***, ***supra***;

---

[12] ***See*** Agreement at ¶ 12 (stating that the property is being purchased "solely in reliance of" an inspection performed by Appellees or their agent and that "there are no representations or warranties except as herein set forth"); ***id.*** at ¶ 16 ("This Agreement constitutes the entire contract between the parties hereto and there are no other understandings, oral or written, relating to the subject matter hereof.").

[13] We agree with the parties that the trial court erred in finding that parol evidence of Appellant's misrepresentations regarding re-tipping work was admissible because the Agreement did not include language specifically denying the existence of the re-tipping representations. ***See*** TCO at 5. Pennsylvania case law only requires that the subject matter of the alleged fraud be covered by the written contract and that the written contract purport to cover the entire agreement of the parties. ***See Bardwell***, ***supra***. In this case, the re-tipping work was to be included as additional consideration for the purchase of the property. ***See*** Agreement at ¶ 3 (outlining the terms of consideration); ***id.*** at ¶ 16 (representing that the Agreement constitutes the entire contract between the parties).

*McGuire*, *supra*.  Yet, we must consider the merits of Appellees' argument that this matter falls within the real estate inspection exception.

Indeed, "[a]n exception to th[e] general formulation of the impact of the parol evidence rule has been created and followed by the so-called 'real estate inspection cases,' *i.e.*, *LeDonne* … and its progeny." *Blumenstock*, 811 A.2d at 1036.  As we explained in *Blumenstock*:

> The *LeDonne* line of cases involves written agreements for the sale of real property, almost always residential, that contain integration clauses.  *1726 Cherry St*[*. P'ship*], 653 A.2d at 669 n.6.  Despite these integration clauses, Pennsylvania courts sometimes have permitted evidence of oral representations to be admitted.  *Id.*
>
>> The test enunciated for this type of case, as stated by the *LeDonne* [C]ourt, requires a balancing test of the extent of the parties' knowledge of objectionable conditions derived from a reasonable inspection against the extent of the coverage of the contract's integration clause in order to determine whether that party could justifiably rely upon oral representations without insisting upon further contractual protection or the deletion of an overly broad integration clause.
>
> [*Id.*] at 669-70 n.6.  *Accord Lenihan v. Howe*, … 674 A.2d 273, 275 ([Pa. Super.] 1996) (applying the *LeDonne* balancing test in reliance upon the formulation set forth in *Myers v. McHenry*, … 580 A.2d 860, 864 ([Pa. Super.] 1990)).  The *LeDonne* test was crafted because Pennsylvania courts have refused to enforce the parol evidence rule in so strict a manner as to deny relief to a party who was unable to entirely protect himself from the harm he eventually suffered.  *1726 Cherry St*[*. P'ship*], 653 A.2d at 670 n.6.[14]

_____

[14] The Court in *1726 Cherry St. P'ship* elaborated:

*(Footnote Continued Next Page)*

*Id.* at 1036-37.

We are cognizant that the balancing test established in *LeDonne* is **almost** always applied in cases involving the purchase of residential real estate, *see Blumenstock*, *supra*, and as Appellant points out, the instant matter involves a commercial real estate transaction. Nonetheless, we are not aware of any case law that indicates the *LeDonne* balancing test **cannot** be applied in a case involving the purchase of commercial real estate, nor does Appellant cite to any such authority. In fact, our research reveals that this Court applied the *LeDonne* test in *Ward v. Serfas*, 564 A.2d 251 (Pa. Super. 1989), an analogous case which we find particularly instructive here.

In *Ward*, the appellant entered into an agreement to purchase a nursing home from the appellees. *Id.* at 252. The appellant's inspection of the premises prior to entering into the agreement failed to reveal various defects of which the appellees had knowledge, and during the inspection, the appellees made various misrepresentations about the condition of the

---

Clearly this formulation of the parol evidence rule was crafted because the court realized that buyers of real estate, especially unsophisticated buyers of residential real estate, are pragmatically incapable of fully ascertaining the physical condition of the property they are buying. Sellers of such property, on the other hand, are customarily in possession of all the available information concerning the condition of the property. Thus, the court has refused to enforce the parol evidence rule in so strict a manner as to deny relief to a party who simply could not entirely protect himself from the harm he eventually suffers.

*1726 Cherry St. P'ship*, 653 A.2d at 670 n.6.

property. *Id.* The appellant instituted an action against the appellees, in which she alleged the following:

> In count one, [the] appellant alleges that [the] appellees showed her the fireplace, and specifically represented that it was operational and that it had often been used by them. In fact, the chimney was blocked and the flue liner was defective, and [the] appellees were aware of these defects at the time of the inspection. [The a]ppellees also actively concealed a burn mark in the living room floor by placing furniture over it.
>
> In count two, [the] appellant alleges that water damage to one of the rooms on the top floor of the nursing home was not revealed during the inspection. With respect to the water damage, she alleges that [the] appellees told her that the roof needed to be repaired and that they were going to get it repaired. However, they did not reveal the water damage caused by the leaking roof to her. [The a]ppellant also avers that she did not see the water damage during her inspection since [the] appellees hurried her through the inspection of the upstairs in order that the tenants would not be disturbed.
>
> Count three relates to the sewage system in the home. [One of the appellees] showed [the] appellant an area which allegedly contained the sewage system, and he also told [the] appellant, in response to her question, that the sewage line had been inspected and that it was in good working order except in two respects: it needed to be cleaned and required a new top. In truth, the sewer line has not been operable and has been discharging raw sewage on the neighbor's property for a number of years.
>
> In conclusion, [the] appellant alleges that the misrepresentations made by [the] appellees as set forth in the complaint were made for the purpose of defrauding [the] appellant in order to induce her to purchase the property for a price in excess of its fair value. Further, she alleges that the fraudulent misrepresentations were made knowingly and willfully. She requests the costs of repairing the fireplace, the burned floor, the water damage to the second floor room, and repair of the sewage system.

*Id.*

The appellees filed preliminary objections in the nature of a demurrer, alleging that the sales agreement precluded the requested relief. The trial court granted the appellees' demurrer on the basis of the following inspection/integration clause contained in the agreement of sale:

It is understood that Buyer has inspected the property, or hereby waives the right to do so and has agreed to purchase it as a result of such inspection and not because of or in reliance upon any representation made by the Seller….

The Buyer has agreed to purchase it in its present condition unless otherwise specified herein. It is further understood that this agreement contains the whole agreement between the Seller and the Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this agreement shall not be altered, amended, changed or modified except in writing executed by the parties.

*Id.* at 253.

"The trial court ruled that the alleged defects were not latent, but were reasonably discoverable upon inspection and that [the] appellant could not rely upon parol evidence to contradict the clear and unambiguous language of the inspection/integration clause." *Id.* However, on appeal, we determined that this result was incorrect under controlling precedent and reversed the trial court's decision. *Id.* We opined:

In *Mancini*…, we examined the ability of a buyer to prove oral representations regarding the condition of real estate when the buyer had signed an agreement of sale containing an identical

- 28 -

inspection/integration clause.[15] We held, notwithstanding the clause, that a buyer could recover for latent defects where the defects were not reasonably discoverable through an inspection of the property and where the seller had actual knowledge of the latent defects and had either made affirmative representations as to the absence of the defect or had made efforts to hide the defect physically by placement of objects to conceal it. We held that evidence of fraud in inducement of a contract to buy real estate was not barred by the parol evidence rule under those circumstances.

*Id.*

Discerning no distinction between the appellant's allegations that the appellees intentionally hid a burn mark by placing furniture in front of it and the allegations in *Mancini* that the sellers concealed water damage to the basement by placing objects in front of the affected area, we concluded that *Mancini* was controlling "as to the appellant's ability to recover for the burnt floor if she can establish her allegations at trial." *Id.* Likewise, we determined that the appellant established a claim under *Mancini* by alleging that the condition of the fireplace was not reasonably discoverable from her inspection and that the appellees intentionally made an affirmative misrepresentation that it was operable. *Id.*

---

[15] The integration clause in *Mancini* provided in pertinent part that: the agreement contained the whole agreement between the parties; the buyers inspected the property and agreed to purchase it as a result of such inspection and not in reliance upon any representation made by the sellers; and the buyers agreed to purchase it in its present condition unless otherwise specified in the agreement. *Mancini*, 458 A.2d at 584. Therein, we interpreted this clause, "as we interpreted the same type of clause in *LeDonne*…, to deny only 'the existence of verbal representations as to the character or quality of land and building conditions reasonably apparent from an inspection of the premises.'" *Id.* (quoting *LeDonne*, 389 A.2d at 1129).

As for the appellant's allegations regarding the sewage system and the water damage, we concluded that *LeDonne* controlled. *Id.* We explained:

> There, the buyers contended that the sellers had falsely responded to specific questions regarding the condition of the property, including that the septic system was operable, the sun deck did not leak, and the cellar did not leak. The buyers also contended that they could not have discovered these defects through their visual inspections of the property. Despite the fact that there was an integration/inspection clause similar to the one at issue, we ruled that the verbal representations of the sellers about the condition of the septic system were admissible at trial since the condition of the system was not ascertainable by visual inspection. On the other hand, we determined that the parol evidence rule did prevent proof of the statements regarding the leakage of the sun deck and the cellar since the buyers' statements indicated that there was evidence of water leakage visible during their inspection and they nonetheless signed the agreement. We reasoned that since the septic system was underground, the buyers could not have reason to know of [the] seller's misrepresentations concerning the adequacy of the system. Accordingly, we determined that the parol evidence rule did not bar admission of evidence of the sellers' misrepresentations concerning the septic system.

*Id.* at 253-54 (internal citations omitted). We stated that, by its nature and in accordance with our decision in *LeDonne*, the sewage system defect was latent. *Id.* at 254. Accepting as true all of the allegations in the complaint, we determined that the appellant stated a claim under Pennsylvania case law and that the granting of the demurrer was improper. *Id.*

Similarly, in the case before us, Appellees allege, *inter alia*, that Appellant misrepresented the condition of the roof and the floor, that he was aware of the falsity of his statements, and that he made the misrepresentations with the intention to mislead Appellees into purchasing the

property. In addition, Appellees allege that the holes in the floor had been covered up with steel plating and that neither the defects in the roof or the floor were readily apparent on inspection. By their nature, these defects are latent and were not reasonably discoverable through a visual inspection of the property. Accordingly, evidence of Appellant's misrepresentations pertaining to these defects is admissible at trial. *See Ward*, *supra*; *Mancini*, *supra*; *LeDonne*, *supra*; *see also 1726 Cherry St. P'ship*, 653 A.2d at 670 n.6 (explaining that the *LeDonne* test was developed in an effort to provide relief to buyers of real estate who are sometimes incapable of fully ascertaining the condition of the property they are buying, whereas the seller is customarily in possession of all the necessary information regarding the property's condition).

On the other hand, Appellant's representations regarding the re-tipping work to be provided to Appellees and whether the appropriate permits were in place do not involve latent defects in the property and, therefore, do not fall within the real estate inspection exception. *See LeDonne*, *supra*. If Appellees relied on these representations in entering the contract, they could have protected themselves by insisting that these inducements be made part of the Agreement and refusing to enter the Agreement if they were not. *See Toy*, *supra*; *Bardwell*, *supra*. As such, evidence of Appellant's representations pertaining to the re-tipping work and permit status is barred by the parol evidence rule. *See Yocca*, *supra*; *Bardwell*, *supra*; *McGuire*, *supra*.

Notwithstanding our determination that evidence of Appellant's representations regarding the re-tipping work and permit status is inadmissible, Appellees have stated a claim for fraudulent inducement based on the alleged misrepresentations concerning latent defects in the building, *i.e.*, the roof and the floor. **See Yocca**, **supra**; **Bardwell**, **supra**; **LeDonne**, **supra**. Thus, granting a demurrer on this claim would not be appropriate. **See Ward**, 564 A.2d at 254 (stating that the granting of a demurrer is only proper when it is certain that no recovery is possible).[16]

Accordingly, we affirm the January 9, 2024 order overruling the preliminary objections pertaining to Appellees' fraud in the execution and fraud in the inducement claims.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/7/2025

---

[16] The trial court does not address the real estate inspection exception as recognized by **LeDonne** and its progeny. However, we may uphold a decision on any proper basis and are not constrained to affirm on the grounds relied upon by the trial court. **See Nguyen**, **supra**.